## DAVIS v. TEXAS LUMBER CO., Inc.
### No. 4534.

Court of Appeal of Louisiana. Second Circuit.

March 31, 1933.

Irion & Switzer and C. B. Emery, all of Shreveport, for appellant.

Cook & Cook and C. D. Egan, all of Shreveport, for appellee.

MILLS, Judge.

Plaintiff claims to have been knocked to the pavement and seriously injured by a truck belonging to defendant company, negligently operated by its servant in the course of his employment. The accident is alleged by plaintiff to have occurred about 10 o'clock in the morning of January 12, 1932, at the corner of Abbey street and Pierre avenue in the city of Shreveport; claims that he was going north on the west side of Pierre avenue when a truck, traveling rapidly in the same direction, without warning, turned suddenly to the left into Abbey street, striking him after he had progressed three or four feet from the curb into Abbey street; that the car ran up onto the curb on the north side of Abbey street, backed off, and continued on its way without the driver paying any attention to plaintiff; that plaintiff was knocked to the pavement, causing his nose to bleed and his mouth to gush blood; that he was assisted to his feet and walked on home alone; that because of the accident he has suffered a partial paralysis of the right side, permanently disabling him.

[■] Necessarily, before plaintiff can recover, he must first establish the fact that he was hit by defendant's truck, which in the answer is denied. He says that he saw the truck before it cut the corner, but did not pay much attention to it, as he presumed that it would continue on up Pierre avenue. Plaintiff, walking at an average speed, being overtaken and struck by a truck going 30 to 35 miles per hour, would have small opportunity to observe the vehicle. However, he says that it looked like an International truck. He says that he was struck by the left side of the truck about its center, which is difficult to comprehend. He says that he saw "Texas Lumber Company" written on the side of the cab; did not see any other writing "because I was in misery too much." It is also hard to visualize the reading of the name on the side of the cab by plaintiff after he was struck, as he seems to testify. He is utterly unable to identify or describe the driver, though he says he had seen him before and would know him if he saw him again. He tries to testify as to the license number on the truck, saying that some white man got the number of the truck as it was backing off the curb, wrote it down on a piece of paper, gave it to plaintiff, and told him to go ahead and have the nigger arrested. This was objected to and excluded as hearsay. Its admissibility is urged by plaintiff as a part of the res gestæ.

[■■] To constitute res gestæ, a statement must not only be reasonably contemporaneous with the accident, but must also be spontaneous and uncalculated. The ruling of the court rejecting this evidence was correct. One has but to follow the process of the mind of the man taking, writing down, and offering the written number to plaintiff to conclude that his action was dictated by thought and calculation, and was not an unstudied unpremeditated exclamation inspired by the sudden hap-

pening of the accident. Jones on Evidence, p. 515, § 34; Wigmore on Evidence, § 1749; 22 Corpus Juris, 461 et seq.

◼ Hayes Womack testifies that he was going down Pierre avenue in the opposite direction from plaintiff, but on the same side of the street; that he was within 60 or 70 yards of the spot where the car hit the man; that, after he had helped plaintiff up and started away, the mysterious white man called him back to take his name and address. Strangely, neither plaintiff nor the witness know who this man is. Why he should take all this trouble to get the number of the truck and the name and address of Womack, and yet fail to give plaintiff his own identification, is not explained.

Womack, though 60 or 70 yards away, says that he saw on the cab, "Texas Lumber Company," but that he could not get the number. On cross-examination, when reminded of the fact that he can neither read nor write, witness says some one told him the name on the truck. This witness, though claiming to be unacquainted with plaintiff at the time of the accident, made two trips to the yards of defendant company in an effort to get its driver to go to the office of plaintiff's counsel. Though this driver is his first cousin, he does not identify him as the operator of the truck at the time of the alleged accident.

Ben White, another negro, was coming along the north side of Abbey street from the west. He claims to have been within 10 or 12 feet of the place of impact. If the accident occurred as described, the truck must have come directly at him as it turned the corner, yet he makes no attempt to identify its driver. He did not see any name on the truck, but says it was an International truck. Though he says he was looking directly at the truck, he does not know whether the front or the back hit plaintiff. He says the driver of the truck was known as "Bridges." Though the accident occurred at a reasonably busy intersection, with many stores and residences in the immediate vicinity, these are the only witnesses to the occurrence offered by plaintiff.

The principal defense is that defendant's truck did not strike plaintiff; was in no accident on the date alleged, not having been even in the vicinity of the alleged occurrence at the time of its happening. The defendant company owns and operates, for the purpose of delivering lumber, but one truck. It is an International truck, with the inscription, "Texas Lumber Company, Mullen's Storage," in equal sized letters on the side of the cab.

Mr. Ellington, defendant's manager, testified that but one man, Jimmie Jacobs, drives this truck; that every delivery is accompanied by a ticket, dated, and having a serial number. He filed in evidence ticket No. 9611, showing a delivery on January 9th, and ticket No. 9612, showing one on January 13th. He says no deliveries were made between these dates, and no occasion arose for the truck to be out of the yards on January 12th; that Jacobs has worked for him ten or twelve years; that he made no report of any accident; that he knew nothing about the matter until he received a letter from plaintiff's counsel several weeks after its alleged occurrence.

Jimmie Jacobs testifies positively that he is the only one who drives the truck; that it was not driven away from the plant on the 12th day of January; that he was never in any such accident as that alleged; that he has his own car for his private use.

Considering the above and the general unsatisfactory nature of plaintiff's testimony, and that of his witnesses, we cannot find that the trial judge, who saw and heard the witnesses, erred in rejecting plaintiff's demands.

The judgment appealed from is affirmed.