## HARDING v. HELLMAN.
### No. 14851.

Court of Appeal of Louisiana. Orleans.
Jan. 21, 1935.

Johnston Armstrong, of New Orleans, for appellant.

Edw. Rightor, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by a tenant against a landlord for damages for physical injuries caused by the breaking of a plank in the floor of the bathroom on the leased premises, which resulted in an injury to plaintiff's left leg. $1,-000 is asked for pain and suffering and $36 for doctor's bills. The defendant admitted liability and the court below awarded $150 for pain and suffering, and $24 for medical expenses. Plaintiff has appealed.

Two physicians testified, Dr. Gilbert for the plaintiff and Dr. Ficklen for the defendant. Both agreed that the skin of plaintiff's left leg had been scraped off above the knee in two places, one of about five inches in extent and the other slightly smaller. The wounds became infected due, perhaps, to the fact that soiled rags were used to bandage the wounds.

There is little conflict in the medical testimony, but, according to plaintiff, her sufferings were quite extraordinary. She testified that she lost 40 pounds in weight, having declined from 220 to 180 pounds; that her back was injured and that she was compelled to remain in bed for seventy days and obliged to walk with crutches for a year and eight months after she got out of bed, during which time she could wear no shoes and could not support herself on the injured leg; and that, at the date of the trial, two years later, she was still suffering.

It is obvious that the award of the trial court was inadequate for so severe an injury as plaintiff claims to have suffered, and it can only be explained upon the ground that her account of her injuries was not acceptable to the judge, a quo. Her physician, Dr. Gilbert, while apparently more sympathetic than Dr. Ficklen, falls far short of supporting her claim from a medical standpoint. We have, then, only the testimony of plaintiff herself. It is true that there is no countervailing proof except that of Dr. Ficklen's testimony to the effect that he could find no evidence of any injury to plaintiff's back and knew of no reason for the use of crutches, which, at best, is of little probative value as against plaintiff's positive declarations.

The plaintiff is an humble negress, a circumstance which we mention only for the purpose of noting its irrelevance. Humility is a most exalted virtue and truth knows no color line. But she is an interested witness, a party-plaintiff, and, under modern procedure, is permitted to testify. However, it is interesting to recall that interested witnesses were not always competent and their disqualification only removed at a comparatively recent date (in England in 1843 and in America in 1848) and that of parties more recently (England 1851, America 1856). See Wigmore, vol. 1 (2d Ed.) page 1002.

"The law will not receive the evidence of any person, even under the sanction of an oath, who has an interest in giving the proposed evidence, and consequently whose interest conflicts with his duty. This rule of exclusion, considered in its principle, requires little explanation. It is founded on the known infirmities of human nature, which is too weak to be generally restrained by religious or moral obligations, when tempted and solicited in a contrary direction by tem-

poral interests. There are, no doubt, many whom no interest could seduce from a sense of duty, and their exclusion by the operation of this rule may in particular cases shut out the truth. But the law must prescribe general rules; and experience proves that more mischief would result from the general reception of interested witnesses than is occasioned by their general exclusion." Starkie on Evidence (1824), quoted Id., p. 997.

Of course, the rule excluding the evidence of parties rested upon a sounder basis and, as has been seen, was more tenaciously adhered to. However, it yielded to the present universal opinion that all persons who are likely to know anything about a controversy should be permitted to testify, relying upon the court to appraise their credibility with due regard to human frailty. Under the modern practice, the findings of fact by the trial court have attained great importance because, as has been so often stated, the trial court sees the witnesses, observes their demeanor on the stand, and is in a position to determine their credibility. Consequently a finding of fact by a trial court should not be disturbed unless manifestly erroneous.

The trial court was not convinced that such grave consequences resulted from a comparatively simple accident. It is difficult to understand how the two scarified wounds, which plaintiff received when the flooring gave way under her weight and caused her leg to be scratched when it protruded through the floor, should have given her so much trouble. Nor do we understand why it was necessary for her to use crutches for eighteen months, nor why she should be still suffering pain nearly two years after the accident. The testimony of an interested party will be given great weight when its effect is against his interest, but when in his favor, it is received with caution and must contend for credulity with such disqualifying factors as all self-serving declarations engender in the minds of courts striving to ascertain the truth in controversies. But when, as in this case, the unsupported statements of an interested party are at variance with the probabilities and an effect claimed wholly disproportionate to any reasonable expectancy from the cause assigned, the doubtful uncertainty with which the testimony is received is converted into positive incredulity, with which it is rejected. Such considerations doubtless influenced our brother below in his estimate of damages due plaintiff as they have affected us in reviewing his judgment.

In view of the finding of the trial court and of our own conclusions from the record, as it appears to us, we are of opinion that the judgment appealed from is correct.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.