180 So. 509

GIBSON et al. v. FITTS et al.

No. 34769.

April 4, 1938.

Irwin & Cowles, of Shreveport, for appellant.

Mabry & Carstarphen, of Shreveport, for appellees.

ODOM, Justice.

Plaintiffs, who are the widow and the sole heirs of T. H. Gibson, brought suit against Mrs. Jewell Johnson Fitts, alleging that they are owners and in possession of the following described property, situated in the Rodessa Oil Field in Caddo Parish, La.:

"Six and one-half (6½) acres of land lying in the West half of the Southwest quarter of Section 10, Township 23, Range 16. Caddo Parish, Louisiana, described as follows: Commence at the Northeast corner of the W½ of SW¼ of said Sec. 10, Twp. 23, R. 16, run thence South seven (7) acres in length; thence West one (1) acre in width; thence North seven (7) acres in length; thence East one (1) acre in width, to point of beginning; less right-of-way of one-half acre previously sold to Kansas-City-Shreveport & Gulf Railroad Company, as is further shown by map of survey made by George Dutton, Surveyor hereto attached and made part hereof."

Plaintiffs alleged that Mrs. Jewell Johnson Fitts had slandered, and is continuing to slander, their title to the said property by claiming and asserting that she is the owner thereof, and by having recorded in the conveyance records of Caddo parish certain pretended sales and judgments affecting said property.

It is further alleged that Mrs. Fitts has slandered plaintiffs' title by executing certain oil, gas, and mineral leases on the said property, and that the lessees under Mrs. Fitts are likewise slandering plaintiffs' title by asserting that they own certain mineral rights therein. Mrs. Fitts and all those who claim interests in the property acquired from her are made parties defendant. Plaintiff prayed for judgment recognizing them as owners of the property, recognizing that they are entitled to the quiet and peaceable possession of the same, and for judgment perpetually enjoining the defendants from slandering their title, and ordering canceled from the records the deeds, judgments, leases, etc., affecting the property.

The defendants filed certain exceptions which were overruled, whereupon the principal defendant, Mrs. Jewell Johnson Fitts, answered, setting up title to the land in herself, especially alleging that she was the record owner thereof, and setting out her chain of title, which she traces by mesne conveyances back to the United States government. The other defendants filed answers, in which they alleged that they had acquired from Mrs. Fitts in good faith such interests in or upon the land as they claimed, and alleged that she was the record owner of the property.

Defendants having converted the suit into a petitory action by setting up title in themselves, plaintiffs in the possessory action then pleaded 30-year prescription acquirendi causa, especially alleging that they had been in actual corporeal possession of the said property continuously and as owners for more than 30 years prior to the date on which Mrs. Fitts, the defendant in the possessory action and the plaintiff in the petitory action, asserted title to the property by selling interests therein and leasing it.

There was judgment maintaining this plea of prescription, recognizing plaintiffs in the possessory action, defendants in the petitory action, as owners of the land involved, ordering canceled from the records the various instruments executed by Mrs. Fitts affecting in any way the title to the land, and perpetually enjoining her and those who held under her from slandering plaintiffs' title. Mrs. Fitts appealed. The other defendants in the possessory action, plaintiffs in the petitory action, did not appeal.

The Gibsons, who are plaintiffs in the possessory action and who became defendants in the petitory action, concede that they have no record title to the land involved, and concede further that Mrs. Jewell Johnson Fitts, who is the defendant in the possessory action and who converted the suit into a petitory action by claiming title in herself, has a perfect record title to the property. But the Gibsons claim that they have acquired title to the property by the prescription of 30 years acquirendi causa, under article 3499 of the Revised Civil Code, which provides that "The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith," and they claim that their possession of the property meets the requirements of Article 3500 of the Code, which says:

"The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner."

Mrs. Jewell Johnson Fitts, defendant in the possessory action and plaintiff in the petitory action, concedes that the Gibsons have had corporeal possession of the property since about the year 1900. But her contention is that the Gibsons did not possess as owners during that entire period; that more than once during that period the Gibsons acknowledged that they were not the owners of the property; that on more than one occasion T. H. Gibson, husband of Mrs. Nora Gibson and father of the other plaintiffs in the possessory action, offered to purchase the land from M. A. Johnson, who was Mrs. Fitts' author in title; and that on two separate occasions Mrs. Nora Gibson tried to purchase the property from the heirs of M. A. Johnson; and she relied upon article 3520 of the Code, which reads as follows:

"Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed."

In addition to this article of the Code, counsel for Mrs. Fitts cite many decisions of this court holding that, if at any time during the thirty years the party claiming title by prescription has acknowledged the right of the one against whom the prescription is pleaded, the running of prescription is interrupted thereby.

The testimony adduced at the trial amply supports the judgment of the trial court, which recognized the Gibsons' title based upon 30-year prescription. The record discloses that on March 19, 1901, Lee Johnson and M. A. Johnson, who are Mrs. Fitts' authors in title, sold to T. H. Gibson the following described property:

"The NW¼ of the SE¼ and the NE¼ of the SW¼, Section 10, Township 23, Range 16, and five (5) acres in a square in the extreme NW corner of the SE¼ of the SW¼ of the same section."

This sale is evidenced by deed of record in the notarial records of Caddo parish.

A reference to the description of the seven-acre tract of land involved in this suit will disclose that it is a narrow strip one acre wide and seven acres long, lying west of and adjacent to the tract above described. The notarial records show that the Johnsons, who sold the above-described tract to Gibson in 1901, owned also, at that time, the seven-acre tract involved in this controversy.

The Gibsons contend, and the court permitted the introduction of some parol testimony to show, that the Johnsons intended to sell, and that T. H. Gibson intended to purchase, the seven-acre tract of land along with the other land. The testimony admitted to this effect disclosed that the seven-acre tract and the larger tract constituted one farm, all inclosed by one fence, the entire tract being cultivated as one field. The evidence satisfies us that Gibson intended to purchase, and the Johnsons intended to sell, the entire tract. Counsel

for Mrs. Fitts objected to this parol testimony on the ground that title to real estate cannot be established by parol testimony. We find it unnecessary to pass upon the contention of the Gibsons in this connection, because the testimony clearly shows that T. H. Gibson took possession of the seven-acre tract along with the other tract which he purchased, and that he held continuous, uninterrupted, open and peaceable possession of the entire tract as owner, either personally or by his agents, up to the date of his death in the year 1927, and that his widow and heirs have had like possession from the date of his death up to the year 1934. The testimony shows that there was not the slightest disturbance of this possession for a period of more than 30 years from 1901.

The testimony shows that, at the time Gibson purchased the property, there was a fence on the western edge of the seven-acre tract and, as we have said, that tract was inclosed by fences with the large tract in one field. The "vestiges" of that fence are still there, Civ.Code, art. 3502.

To prove possession, counsel for the Gibsons called fourteen witnesses, the majority of whom had lived in the vicinity of this property and had seen it and had observed conditions there practically all their lives. The sum and substance of their testimony is that, when Gibson purchased the property, there was a growing crop thereon, which he also purchased, and that he and his family harvested the crop growing on the seven-acre tract as well as on the larger tract, and that this small tract was farmed that year along with the other land. These witnesses, or a majority of them, testified positively that, during each successive year thereafter up to 1912, T. H. Gibson cultivated the seven-acre tract along with the other open land on the larger tract; that in the year 1912 Mr. Gibson's health failed and it became necessary for him and his family to move off the place. Whereupon, he turned the property over to Ollie Zylks, his brother-in-law, in 1912. Ollie Zylks remained in charge of the property, including the seven-acre tract, until 1928, either cultivating it himself or renting it to others as Gibson's agent. During the year 1928 and the years succeeding, George Zylks, a brother-in-law of Gibson, had charge of the property and either cultivated it personally or leased it for the Gibsons.

The testimony of the witnesses called for the Gibsons makes it perfectly clear that this particular seven-acre tract of land, less the one-half acre taken up by the right of way of the railroad, was not only inclosed with the larger tract but was actually cultivated each year for more than 30 years either by Gibson personally or by his agents, and that this possession of the land was open and notorious and as owner. The record shows that on the 30th day of December, 1922, T. H. Gibson executed a mortgage in favor of Tim Lawrence for $600, in which mortgage the seven-acre tract was included with the other land.

The map shows that a railroad runs diagonally across this seven-acre strip of land, leaving approximately one-half acre thereof separated from the balance of the tract, and counsel for Mrs. Fitts argue that the testimony does not show that this par-

-ticular portion of the tract was ever possessed in any way by the Gibsons. Counsel for Mrs. Fitts are mistaken in this. The testimony shows that, as far back as 1901, there was a saw mill near this property and that the owners of the mill had been permitted to erect certain houses on that portion of the tract north of the railroad, with the understanding that the mill was possessing the land for the owner of the land and that, when and if the mill was abandoned, these houses should belong to the owner of the land; that the mill was abandoned and that, in accordance with the agreement, the houses passed into Gibson's possession and remained on the land until the year 1919, when they were removed; and the testimony shows that, after they were removed, this portion of the tract was actually cultivated by those who had possession of the main tract.

We think that the Gibsons proved possession for the required length of time of that portion of the tract north of the railroad, as well as possession of that portion south of it.

One or two of the witnesses called for Mrs. Fitts testified that during 1 or 2 years between 1901 and 1934 the seven-acre tract was not cultivated. A Mr. Young purchased the seven-acre tract at tax sale about 1926. He testified that the tract was not in cultivation at the time he purchased it. We think he is mistaken, because the other witnesses all testified that the land was cultivated each year.

In connection with this tax title, the record discloses that Mrs. Nora Gibson et al., who are plaintiffs in the possessory action in the case presently before us, brought suit against Mr. Young to have the tax title canceled, and that they were successful. We find in the record the opinion of the Court of Appeal, Second Circuit, Gibson v. Young, 163 So. 747, which shows that the question of plaintiffs' possession was made an issue in that case and that the question as to possession raised before the Court of Appeal was the same as that raised before us in this case. In speaking of the testimony, the Court of Appeal said:

"We have read it closely, and have no hesitancy in saying that it decidedly preponderates in favor of plaintiffs' contention that they and the deceased, Gibson, possessed same continuously and uninterruptedly, as owners, for more than 30 years."

To show that T. H. Gibson had acknowledged the title of the Johnsons, counsel for Mrs. Fitts called a witness named Mosely, who testified that on two or three different occasions in the year 1925 he heard T. H. Gibson offer to purchase this seven-acre strip from M. A. Johnson. The trial judge attached no weight whatever to this testimony, and neither do we. Gibson was dead at the time of the trial, and testimony as to statements made by a dead man is the weakest of all testimony.

Mrs. Ellen Johnson, the mother of Mrs. Fitts, testified that on a certain occasion at a fish-fry—the date of which she could not recall—she heard T. H. Gibson say he wanted to buy the land from Johnson, but she admitted, however, that no particular land was mentioned. Her testimony on

this point, like that of Mosely, is too weak to deserve serious consideration. She testified further that Mrs. Nora Gibson, widow of T. H. Gibson, asked her to see Mrs. Fitts and ascertain whether she would sell this land. Mrs. Gibson positively denied this. Mrs. Fitts, the appellant, testified that Mrs. Nora Gibson approached her in 1927 or 1928 and tried to purchase the land from her. Mrs. Gibson denied positively that she had ever tried to purchase the property, or had thought of doing so, from Mrs. Fitts or anyone else. And, in this connection, Mrs. Gibson testified that she had always thought that she and her husband owned the property.

Aside from this, the testimony shows that Johnson lived near this property until his death, which was subsequent to the year 1925. Therefore, he must have known that the Gibsons were occupying and cultivating the property every year, and, if he had considered that he owned the property, it is inconceivable that he would have permitted them to continue to occupy and cultivate the property without protest and without demanding rentals. There is no testimony that shows or even indicates that he ever at any time claimed ownership of the property after 1901.

■ We think Mrs. Fitts failed to prove interruption of the prescription. The testimony as a whole satisfies us, as it did the trial judge, that the Gibsons established title to this property by the prescription of 30 years acquirendi causa. We find it unnecessary to refer to the many decisions of this court relating to the establishment of title to real estate by 30-year prescrip-

tion, or to those cited by counsel for Mrs. Fitts relating to the interruption of such prescription. It suffices to say that the codal articles are clear and specific and that all the requirements laid down in those articles for establishing title by this prescription have been met by the Gibsons.

Judgment is affirmed.

O'NIELL, C. J., does not take part.

LAND, J., absent.