89 So.2d 60

**W. H. HODGES & COMPANY, Inc.**

v.

**Oscar D. WOOD.**

No. 42557.

June 11, 1956.

Carter, Erwin & Carter, Franklinton, for defendant-appellant.

Richardson & Richardson, Bogalusa, Jones T. Prowell, Jackson P. McNeely, New Orleans, for plaintiff-appellee.

HAWTHORNE, Justice.

From a judgment in favor of plaintiff, W. H. Hodges & Company, Inc., in accordance with the prayer of its petition, the defendant, Oscar D. Wood, has appealed.

The trial judge in his reasons for judgment informs us:

"Plaintiff brings this suit on a promissory note dated April 27, 1950, on which it claims there is a balance due of $2,104.14, together with 5% interest per annum from March 3rd, 1954, until paid, and 15% on the aggregate of both principal and interest as attorney's fees. The note as originally written was for $5,355.75 and was identified with an act of chattel mortgage covering a Chevrolet truck and trailer. Plaintiff further asks for recognition of his [its] lien and privilege on the mortgaged property.

"By answer the defendant denied the indebtedness, however, admitted he executed the note, as well as the chattel mortgage, on April 27, 1950, and further answered that he had made payment of all amounts that were due by him to the plaintiff.

"The facts in this case show that the plaintiff W. H. Hodges & Company, Inc.

are commission merchants who deal in the buying and selling of cattle; the defendant O. D. Wood, was likewise engaged in the buying and selling of cattle, and a practice grew up between him and the plaintiff whereby the plaintiff would advance certain monies to the defendant for the purchase of cattle, and the defendant would then send these cattle to the plaintiff's yards in New Orleans where they were sold. As a result of these dealings, the defendant became indebted to the plaintiff even prior to the year 1944. W. H. Hodges, Sr., was president of the plaintiff concern and he was the man who carried out all the business transactions with the defendant. Mr. Hodges, Sr., died prior to the trial of this case. The evidence shows that on April 3rd, 1948, Mr. Hodges Sr. wrote to this defendant in regard to the indebtedness the defendant owed to the plaintiff concern. He attached a complete statement showing the indebtedness to date and also a note for the amount of money shown on the statement, which was $4,758.65, for the defendant to sign and return to him, which was to be paid at the rate of $100.00 per month. In this letter Mr. Hodges Sr. stated that an old balance had been charged off the company's books on December 31, 1944, amounting to $2,032.40 [$2,032.05], that this amount was going to be waived by the plaintiff concern, or, in other words, the plaintiff company was going to make the defendant a present of this amount.

"While it is true that Mr. Wood, the defendant, did make payments of $100.00 a month as requested in this letter, he did not sign the note and return it to Mr. Hodges Sr., which it is apparent from the terminology of this letter, is what Mr. Hodges Sr. intended for him to do—as a matter of fact, the defendant presented this unsigned note on the date of the trial. Of course, it is a determination of the contents of this letter, together with the subsequent events, that will ascertain whether or not this defendant is indebted to this plaintiff.

"About five months after receiving this letter, or in September, 1948, the defendant went to the plaintiff concern in the City of New Orleans, and at that time Mr. W. H. Hodges Sr. was living; after a lengthy conversation between Mr. Hodges Sr. and the defendant, Mr. Hodges Sr. had his bookkeeper, Mr. Mitchell, draw a note in the sum of $6,766.56, and it is shown by one of the three statements in the record that made up the account, that $2,429.90 represented the old indebtedness, plus interest, which Mr. Hodges had written to the defendant about on April 3, 1948, and in which letter this is the amount he had told the defendant he was going to make him a present of. Mr. Wood, the defendant, seeks to explain that Mr. Hodges Sr. told him to sign the note for this amount, that he intended to use it as collateral, and the defendant further stated he was not under the impression that he owed any such amount. I note further that Mr. Mitchell, the bookkeeper, testified that Mr. Hodges asked him to reduce the amount which was owed by $200.00, and that he did so, for Mr. Wood actually owed at that time $6,966.56. Of course, as heretofore explained, Mr. Hodges Sr.'s explanation of the transaction was not obtainable for he died prior to the date of the trial. Suffice it to say, that the explanation given herein by this defendant does not really impress me, for I see no reason why Mr. Hodges would have desired him to have signed a note for an amount for more than he actually owed. It is apparent to me what transpired was Mr. Hodges Sr. did not consider the old debt cancelled for the reason that Mr. Wood had not signed the note of April 2nd for the balance due, which Mr. Hodges had mailed to him, and in view of the fact that he had not done so, Mr. Hodges exacted of him the old indebtedness, and the defendant is bound to have agreed thereto, for the reason he signed the note on September 2nd, 1948, for the sum of $6,966.56 [$6,766.56].

"The defendant made regular payments on this note as shown by the credits on the back of said note, and on September 7th, 1949, the note of September 2nd, 1948, was settled by a new note in the sum of $5,883.81 as is shown by Exhibit 'P-A' [P-8] in this record. This last note was settled by a new note dated April 27, 1950, in the sum of $5,366.76 [$5,355.75], and that is the note which is herein sued on. It is

rather singular to me that the defendant signed all of these notes for the amounts therein specified and made payments on them until they were reduced to the amount herein sued for without ever objecting to the correctness of said notes, and now contends that he has paid them in full. The best evidence is that the defendant did consider subsequent to April 3rd, when he received the letter from Mr. Hodges Sr., that he did owe the old indebtedness was that he signed the note of September 2nd, 1948, including said old indebtedness. I feel satisfied that he understood this, and I further do not consider that the added amount was inserted in the note by the plaintiff to use said note as collateral."

After reading the record we are convinced that the able trial judge has correctly found the facts in this case. We cannot improve upon the clarity of his statement of the facts or upon his reasoning. His judgment in favor of plaintiff is entirely correct, and we adopt his reasons as our own.

In this court appellant Wood contends that the letter of April 3 written by W. H. Hodges to him constitutes a remission of his existing indebtedness, which was an open account, to the extent of $2,032.05, so as to reduce his debt to the plaintiff to $4,758.65 as of that date. Appellant contends that because he has paid the plaintiff since that time the sum of $6,150, he has overpaid his indebtedness, and this alleged overpayment was the basis of a reconven-

tional demand for $908.18, the amount of his alleged overpayment with allowance for interest.

If appellant's position is correct that the letter of April 3, 1948, in fact did constitute a remission of his existing indebtedness by the sum set forth hereinabove, then he has overpaid his indebtedness and should recover the amount of this overpayment. However, we do not construe the letter written by Mr. Hodges, now deceased, when it is considered with all the established facts, to be a conventional remission of the existing debt by the sum of $2,032.05. To us it was merely a conditional offer to remit a portion of this debt, conditioned upon Mr. Wood's accepting the proposition to convert the old outstanding open account into a new indebtedness evidenced by the promissory note which was enclosed but which the defendant never signed and returned to Hodges.

Morever, it is strange to us that the defendant would later sign the note of September 2, 1948, which included the sum he now says was remitted if in fact he did not owe this sum, and also that he would sign subsequent notes which also included this amount. He explains his execution of the note of September 2, 1948, by saying that Mr. Hodges, who was dead at the time of the trial, told him to sign the note for this amount because he, Hodges, intended to use it as collateral. Defendant testified

that he did not owe the full amount of this note at the time of its execution. We cannot accept this explanation, for it is well settled that statements made by a deceased person against his interest are the weakest kind of proof, and that testimony of this character when standing alone is entitled to little consideration and should be received with the utmost caution. Davidson v. American Paper Mfg. Co., 188 La. 69, 175 So. 753, 114 A.L.R. 1044, and cases there cited; Gibson v. Fitts, 189 La. 753, 180 So. 509; Meridian Land & Mineral Corporation v. Bagents, 211 La. 627, 30 So.2d 563.

The judgment is affirmed at appellant's costs.

HAMITER, J., absent.