174 So.2d 168 (1965)
Paul J. MICHELI and Mrs. Marjorie Michell
v.
TOYE BROTHERS YELLOW CAB COMPANY and Allstate Insurance Company.
No. 1787.
Court of Appeal of Louisiana, Fourth Circuit.
April 5, 1965.
Rehearing Denied May 3, 1965.
*170 Comiskey & Schaff, Val A. Schaff, III, New Orleans, for plaintiffs-appellees.
Deutsch, Kerrigan & Stiles, William W. Messersmith, III, New Orleans, for Toye Bros. Yellow Cab Co., defendant-appellant.
Sessions, Fishman, Rosenson & Snellings, Curtis R. Boisfontaine, New Orleans, for Allstate Ins. Co., defendant-appellant.
Before McBRIDE, CHASEZ and BARNETTE, JJ.
McBRIDE, Judge.
On the morning of June 4, 1961, a collision between two automobiles occurred in the intersection of Royal Street and the outbound roadway of Elysian Fields Avenue; the locus in quo is controlled by the conventional semaphore traffic light; there is nothing in the evidence which indicates that either vehicle was moving at an unlawful speed; the pivotal point is which of the two drivers was proceeding on a favorable green light signal.
One of the vehicles involved, a Pontiac, was being driven by Paul J. Micheli on Elysian Fields Avenue in the direction of the lake; Micheli had as guest passengers in his car his wife and eight-year-old son. The other vehicle was a taxi cab being operated by Rouil Theriot on Royal Street in the direction of Canal Street. The collision took place about mid-intersection, Micheli's Pontiac striking the left side of the cab.
Three suits for damages resulted which were consolidated for trial below and for argument before us. The suit we now deal with was instituted by Paul J. Micheli, for and on behalf of his minor son, Paul, Jr., to recover $25,000.00 for the child's injuries, and by Mrs. Micheli to recover $65,000.00 for her personal injuries. Impleaded as defendants in solido are the owner of the cab, Toye Brothers Yellow Cab Company, a co-partnership, and its component partners, and Allstate Insurance Company, which is the liability insurer of the Micheli vehicle.
The petition alleges the proximate cause of the accident to be the joint and concurrent negligence of both drivers. The cab company denied any negligence attributable to Theriot and avered the accident resulted from Micheli's negligence; alternatively, the cab company pleads that if Theriot was negligent, then Micheli was contributorily negligent and his negligence is imputable to Mrs. Micheli and the child, and therefore, their claims are barred. The cab company and the partners thereof made the Allstate Insurance Company their third-party defendant praying that in the event they are cast that Allstate Insurance Company, as Micheli's insurer, be held solidarily liable. Allstate Insurance Company, in answer to plaintiffs' claims and the third-party demand, denied negligence on the part of Micheli and averred that the accident was caused by Theriot's fault. No good purpose would be served by detailing *171 the reciprocal charges of negligence levelled against the drivers.
After a trial below, Micheli, for the use and benefit of his minor son, recovered judgment for $750.00; Mrs. Micheli obtained judgment for $3,000.00; the third-party demand was dismissed. All defendants appealed.
The cab company contends the trial judge erred in excluding from the evidence, under the hearsay rule, a written and unsworn statement given by Theriot to an investigator of the cab company. Theriot died prior to the trial below from causes unrelated to the accident.
Counsel argue Theriot's statement was admissible (1) because his testimony is unavailable due to his demise, and (2) that the recitals of the statement form part of the res gestae. The questioned statement was made part of the record in accordance with LSA-C.C.P. art. 1636.
The cab company's investigator learned of the accident about ten minutes after its occurrence, and it took him five minutes to reach the scene. After conferring with Theriot, the hand-written statement, consisting of two pages, was made and signed. We have read the document and leave it with the conviction that the person who furnished the information therein was composed, deliberate, coherent and had thoughtfully considered the language used.
The trial judge correctly excluded the statement. Were Theriot living, the investigator could not be permitted to recite what he heard Theriot say as such testimony would constitute the rankest kind of hearsay. Extrajudicial statements, declarations and admissions of a deceased person are the weakest of all evidence and scarcely worthy of consideration. Declarations of a party deceased are inadmissible if the same would be excluded as hearsay were he alive. Larocca v. Ofrias, 231 La. 292, 91 So.2d 351; W. H. Hodges & Company v. Wood, 230 La. 525, 89 So.2d 60; Gibson v. Fitts, 189 La. 753, 180 So. 509; Davidson v. American Paper Mfg. Co., 188 La. 69, 175 So. 753; Franchebois v. New York Life Ins. Co., 171 La. 358, 131 So. 46; Demarets v. Demarets, 144 La. 173, 80 So. 240; Succession of Fisher, 141 La. 189, 74 So. 900; Swift v. Moffett, La.App., 6 So.2d 93; Community Finance Service v. Wiseman, La.App., 4 So.2d 446; Duhe v. Williams, La.App., 199 So. 518; Hood v. Glass, La.App., 198 So. 543; Commercial Trust & Savings Bank v. Thorengren, La.App., 122 So. 92.
"Res gestae" are spontaneous and contemporaneous declarations made by the parties at the time of the occurrence or soon thereafter and as such are admissible in evidence. To constitute res gestae, the statement must not only be reasonably contemporaneous with the event, but must also be spontaneous and uncalculated. To render evidence admissible as res gestae, a showing must be made that, under the conditions prevailing during moments of tenseness, the declarant was reasonably precluded from coolly deliberating or designing so as to fabricate his own interest. Marler v. Texas Pac. Ry. Co., 52 La.Ann. 727, 27 So. 176; Ellis v. Edwards, La.App., 183 So. 116; Butler v. Washington-Youree Hotel Co., La.App., 160 So. 825; Holland v. Owners' Automobile Ins. Co. of New Orleans, La.App., 155 So. 780; Davis v. Texas Lumber Co., La.App., 146 So. 788; Donaldson v. Riddling's Succession, La.App., 145 So. 804; Day v. Armour Fertilizer Works, 8 La.App. 720.
To say the least, the statement is self-serving; by the time the investigator arrived upon the scene, Theriot had ample time in which to compose himself and reflect, and it is manifest that by the statement he meant to exonerate himself from all blame.
Micheli, Mrs. Micheli, the Micheli child and a man named Sumarall, who was driving his automobile immediately to the rear of the Micheli car and traveling in the same direction, testified as plaintiff witnesses. *172 The only eye witness the cab company produced was a Negro named Frank Jack.
The trial judge stated in his reasons for judgment that he "was not impressed" with the testimony of Sumarall and Jack; he thought Mrs. Micheli was nervous "and in fact appeared insecure" and "In short, * * * whereas Mrs. Micheli thinks she knows how the accident happened, she was so `shook-up' when the two cars collided that actually she does not know what happened." The judge also stated that Paul, Jr., did not know what happened because he was only eight years old at the time of the accident and was testifying three years later. The judge made no comment regarding Micheli's testimony; nevertheless, he did not accept it. The reasons for judgment conclude with the following observation:
"The Court cannot simply throw up its hands and say `we pass.'"
The trial judge predicated his holding against all defendants on Insurance Co. of North America v. Gore, La.App., 106 So.2d 471, decided by the late Court of Appeal, Parish of Orleans. The facts of that case are not at all analogous to the present situation. There the parked automobile of an innocent third party was run into and damaged as a result of a collision between two vehicles, the owners whereof were made defendants in solido. The court held that, under the circumstances attending the accident, each defendant bore the burden of exculpating himself from fault, and in the absence of any showing to the contrary, each must be deemed guilty of negligence per se.
We cannot share the trial judge's view that the testimony of the plaintiff witnesses is unacceptable and without probative value.
The Michelis were passing through New Orleans enroute to Florida. After indulging in some sightseeing, they were making their way to U. S. Highway 90 so as to continue onward to their destination.
In view of the holding below, it would be proper to quote the pertinent parts of the testimony of the plaintiff witnesses.
Micheli testified as follows:
"Q. Did you observe the traffic light as you proceeded on Elysian Fields and before you got to the intersection?
"A. Yes, I always pay attention to a traffic light, and I noticed that about one hundred feet before I got to the traffic light that it was green, and I proceeded.
"Q. Did you see the light after that?
"A. Immediately after the collision I seen the light as I got out of the car, and it was still green immediately after I tried to get out.
"Q. So a collision did occur at Elysian Fields and Royal?
"A. Yes, sir.
"Q. Can you tell me which car struck which car?
"A. I struck * * * I struck him a blow right on the left driver's side.
"Q. I see.
"A. Just ahead of the driver.
"Q. Would you describe to the Court just how this accident happened, Mr. Micheli?
"A. Well, before I got into Elysian Fields * * * It was about a block before I got to this Royal I made my left turn in that intersection and proceeded down Elysian Fields, and when I got to within one hundred feet or so I made my approach to this traffic light, which was green, and then all of a sudden I didn't * * * *173 It just came out. The car came right out in front of me, and I didn't see it.
"So I immediately pressed upon the brake and stopped the car as fast as I could, and it wasn't quite fast enough.
"Q. Now, did you see the Yellow Cab before the accident at any time?
"A. No, I didn't get a good view of it. It just come out, you know.
"The tall building there to my right kind of obstructed the vision."
We extract the following from Mrs. Micheli's testimony:
"Q. Would you describe to the Court how the accident occurred?
"A. A Yellow Cab ran a red light, and we hit it.
"Q. Now, Mrs. Micheli, approximately where was your car in relation to the intersection when the cab came out?
"A. It was right up on us. It got right up on us, and my husband tried to step on the brakes, and we hit it.
"Q. Did you observe the traffic light before the accident?
"A. Yes, I did.
"Q. Were you able to determine that it was working?
"A. Yes.
"Q. Was a color in display?
"A. We had the green light for about one hundred feet, and after we hit I glanced up there, and that light was still green.
"Q. What street were you proceeding on?
"A. On Elysian Fields. I don't know the name too well."
Paul Micheli, Jr., testified thus:
"Q. Did you see the accident?
"A. Yes.
"Q. Where were you sitting in the automobile?
"A. In the back seat right behind my mother.
"Q. Did you see the traffic light?
"A. Yes.
"Q. Would you tell me just when it was that you first saw the traffic light? Where was the car when you first saw the traffic light?
"A. About halfway down the block.
"Q. And do you remember what color that traffic light was?
"A. Yes, sir.
"Q. What color was it?
"A. Green.
"Q. Did that light change before the accident?
"A. No, sir.
"Q. And when you say green, in which direction was the light facing that was green?
"A. Towards our car."
Sumarall said:
"Q. Do you know what color the light was facing Elysian Fields where you and the Pontiac were traveling just before the accident happened?
"A. Green.
"Q. Are you sure?
"A. Yes, sir.

*174 "Q. Are you aware of how long that light was green before the accident?
"A. It was green enough that I was going to go on through * * * had plenty of time to go on through.
"Q. Did it remain green after the accident?
"A. It was green when I went under it.
"Q. Did you go under it after the accident had happened?
"A. Just as it collided.
"Q. How far behind the Pontiac were you?
"A. Well, I was going to pass him. Once I passed the intersection I would say my front end was just going to go past them * * * to go up the back of his car."
The strange journey of the Micheli automobile for some distance down the block before it came to a stop is satisfactorily explained. The accelerator had become "stuck" as a result of the impact and fuel continued to flow to the running motor causing it to race. After Micheli alighted, the car started forward, making it necessary that he reach into the vehicle and turn off the ignition, the car then proceeding forward under its own momentum.
Jack, the witness for the cab company, stated he was driving his automobile on the opposite side of Elysian Fields Avenue in the inbound roadway thereof in the direction of the Mississippi River and that, upon reaching the intersection of Royal Street, he was forced to stop because the light facing him was red. He said the same red light necessarily faced motorists going in the opposite direction. He observed Micheli go into the intersection and also saw the cab make its entry therein from Royal Street. Jack says the light for traffic on Elysian Fields Avenue turned green only after the accident had occurred.
We perceive nothing in the testimony of any of the eye witnesses indicating that any one of them was not honestly stating his version of the accident. The testimony is reasonable. The witnesses were unshaken by rigorous cross-examination, and the minor variations which appear are such as would normally be expected to be found in testimony adduced in cases of this kind. This is just another one of those matters wherein the witnesses disagree as to an important detail in the case.
After a sifting and analysis of the evidence, the only conclusion that can be reached is that the testimony of plaintiffs' witnesses outweighs that given by Jack. In cases where there is conflicting evidence, the testimony of one witness should be weighed against the other, and the inference best supported should be adopted. Moreover, it is quite natural that the testimony of two or more unimpeached witnesses should prevail over that of one witness of like character on the other side. Thermo Electric Co. v. Dauterive, 8 La.App. 526. While the number of witnesses for the respective parties is not the criterion of the probative value of their testimony, the number is ofttimes entitled to some consideration. Thoman v. Deliberto, 17 La.App. 574, 136 So. 904. One thing leaps to the eye in this case, and that is, if plaintiffs were testifying falsely, they were doing so against their own interest, which would be most unusual. There is no allegation in the petition that Micheli violated the red light, and his insurer is sought to be held because of other alleged acts of negligence. Had it been a fact that Micheli endeavored to negotiate the intersection in the teeth of a red light signal, it is only reasonable to suppose that such would have been included in the specifications of negligence charged to him, and by supporting such allegation with their testimony, the plaintiffs, as guest passengers, would have *175 had an almost indefensible case against Micheli's insurer. Therefore, the circumstance that the testimony of plaintiffs to the effect that Micheli had the green light being adverse to their interest, makes it appear all the more they were telling the truth. Testimony of an interested party will be accorded great weight when its effect is against his interest. Harding v. Hellman, La.App., 158 So. 595.
Counsel for plaintiff in all earnestness contend that notwithstanding Micheli had the favorable light, the evidence in other respects shows his negligence which they say was a contributing factor in the accident and renders his insurer liable in solido. It is argued that Micheli was greatly at fault for not looking down Royal Street and in not seeing the approaching cab in time to have taken some effective steps to avoid running into it. In support of the argument, counsel cite a number of cases said to hold that a motorist who recklessly and without exercising some degree of caution enters an intersection on a favorable light is not free from negligence if he collides with a vehicle entering the intersection on an unfavorable light. Micheli was not reckless in any respect in attempting the crossing. His view was obstructed by a building on the corner, but he was not required to stop and peer down Royal Street to make certain no vehicles were approaching. He was traveling at moderate speed, lawfully, and under protection of a light signal which had been in his favor for more than 100 feet. He was keeping a proper lookout forward. Under these circumstances, he had the absolute right to rely on a motorist on the intersecting street seeing the red signal facing him and obeying it. Motorists have a right to presume that the signal is understood and will be obeyed by drivers confronted with a red light. Derouen v. American Employers Insurance Company, 240 La. 486, 123 So.2d 896; Youngblood v. Robison, 239 La. 338, 118 So.2d 431; Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So.2d 919. The above rules are applicable with full force in the instant case.
The cases counsel cite have no relevancy here as the facts in each are different from those before us. For instance, Derouen v. American Employers Insurance Company, supra, is a case wherein both drivers claimed the benefit of a green signal light, each testifying he looked at the light only a few feet before entering the intersection. The court held that such being the case, and in view of the exceptional circumstances prevailing, and the failure of the drivers to keep a proper lookout and have their vehicles under proper control, the matter should be treated as one of negligence with respect to actions of both drivers. The court further observed:
"Our most recent jurisprudence has held that a driver proceeding on a favorable light is not held to the same degree of care and vigilance in driving as he would be if no such system prevailed. * * * [Citing cases.] These were cases, * * *, where a proper lookout was kept from a reasonable and proper distance from the light and the testimony was therefore definite as to the color of the light at the time of entry into the intersection." (Brackets ours.)
As Justice McCaleb wrote in Bourgeois v. Francois, 245 La. 875, 161 So.2d 750:
"* * * Indeed, it is now well settled that it is only in exceptional circumstances, where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation and care, that he will be found derelict. * * *"
Theriot, driver of the cab, being alone responsible for the accident, the results of his negligence must be borne by his employer under the doctrine of respondeat superior.
The Micheli child's award was $750.00. He was taken to Touro Infirmary in New *176 Orleans and examined by Dr. Stewart, who testified he only had a bruise on the chest, which we are sure was of a minor nature. The Micheli family remained in New Orleans two days after the accident and then proceeded to Vero Beach, Florida, where they remained for three days enjoying the sunshine and frolicking in the water. Neither the mother nor child sought medical attention. Upon returning to their home in San Antonio, Texas, the Micheli family physician, Dr. Baros, examined the boy's chest; the X-ray plates were negative. The only indication of any residual is gleaned from the boy's own testimony that when he plays hard he experiences pain. His judgment should be reduced to $400.00.
Mrs. Micheli recovered $3,000.00. When Dr. Stewart saw her immediately after the accident, she had bruises on the forehead, right knee, mid portion of right leg and soreness of the neck. The X-rays proved negative. Dr. Stewart diagnosed her condition as painful traumatic myolysis and advised her seeing a physician upon reaching Florida. Dr. Stewart examined Mrs. Micheli again the day before the trial, which was about three years after the accident. He found her "tense, anxious and insecure"; there was full mobility of her neck and no muscle spasm was present. Though Mrs. Micheli complained of midback pains, all tests by Dr. Stewart were negative. Upon returning home after the Florida vacation, Mrs. Micheli saw Dr. Baros, who administered ultrasonic treatment to her neck and shoulders and prescribed a medication described as being a "little stronger than aspirin" for pain. When Dr. Baros saw Mrs. Micheli on June 28, 1961, she was working at her job in a bank. It does not appear she lost any time from work because of her injuries. She visited Dr. Baros twenty-seven times over a period of about three years. It was only upon her first visit to Dr. Baros that the physician noticed the patient had muscle spasm, although no bruises could be observed. Mrs. Micheli continued complaining of headaches, and Dr. Baros often prescribed sedatives when her husband would telephone stating his wife "wants her pills refilled." Mrs. Micheli, according to Dr. Baros, is of a very nervous temperament, and he states he was not much concerned about her condition. Dr. Baros sent Mrs. Micheli to Dr. Hardy, a neurosurgeon, in San Antonio in May, 1962, for examination; she was complaining of persistent headaches, neck pain and stiffness in the lower back, general discomfort and nervous tension. Notwithstanding several tests, Dr. Hardy could arrive at no objective findings, all X-rays being negative. He characterized her from a neurological standpoint as "all right." He, like Dr. Baros, prescribed medication similar to common aspirin and a drug which acted as a muscle relaxant. He stated Mrs. Micheli's condition would improve "significantly upon completion of pending litigation." Of much significance to us is the statement of Micheli himself with reference to his wife's condition. He said, "She takes far too much medicine" and he felt "she was overdoing the medicine."
Louisiana has not established any formula or rule of thumb for ascertaining damages for pain and suffering in terms of money. See Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149. While much discretion is vested in the trial court in fixing damages, our duty, as an appellate court, is to revise the judgment whenever it is manifest that the trial judge has abused that discretion and has allowed an excessive or inadequate amount for plaintiff's damages. In this instance, we readily conclude that both awards made below are excessive, and we believe a reduction of the amounts is in order.
For the reasons above assigned, the judgment insofar as it runs against Allstate Insurance Company be and it is hereby reversed, and the demands as against said defendant are dismissed at plaintiffs' costs in both courts; it is further ordered, *177 adjudged and decreed that the judgment appealed from be amended so as to provide that the award in favor of Paul J. Micheli, for and on behalf of his minor son, Paul J. Micheli, Jr., be reduced to the sum of $400.00, and that the judgment in favor of Mrs. Marjorie Micheli be reduced to the sum of $1,500.00. As thus amended, and in all other respects the judgment appealed from is affirmed.
Reversed in part, amended and affirmed.