209 So.2d 105 (1968)
Teovic FONTENOT, etc., et al., Plaintiff and Appellant,
v.
PAN AMERICAN FIRE & CASUALTY COMPANY et al., Defendant and Appellee.
No. 2270.
Court of Appeal of Louisiana, Third Circuit.
March 27, 1968.
Rehearing Denied May 2, 1968.
Writ Refused June 21, 1968.
*107 Cormie & Morgan, by Robert E. Morgan, Lake Charles, for plaintiff-appellant.
Plauché & Plauché, by Allen L. Smith, Jr., Hall, Raggio, Farrar & Barnett, by Louis D. Bufkin, Lake Charles, for defendant-appellee.
Before CULPEPPER, SAVOY and LEAR, JJ.
CULPEPPER, Judge.
This is a suit for damages for personal injuries arising out of an automobile accident. The plaintiff, Teovic Fontenot, sues individually and on behalf of his minor daughters, Patricia, the driver of one of the vehicles, and Sheila, a passenger therein. Named as defendants are Wanda Petroleum Company, owner of the other vehicle, and its liability insurer, Pan American Fire & Casualty Company. The defendants filed a third party demand against Traders & General Insurance Company, the liability insurer of plaintiff's automobile, for contribution in the amount of one-half of any judgment rendered in favor of plaintiff and against the defendants.
The case was tried before a jury, which found no negligence on the part of the driver of the truck owned by the defendant, Wanda Petroleum Company. Hence, the jury made no finding as to whether the driver of the Fontenot automobile was also negligent. The lower court judgment dismissed both the principal demand and the third party demand. Only the plaintiff has appealed.
As regards negligence, the substantial issues on appeal are: (1) was the driver of the truck owned by Wanda Petroleum Company negligent in passing the Fontenot vehicle at an intersection and (2) was Patricia Fontenot contributorily negligent in making a left turn at a time when it was not safe to do so.
The scene of the accident is at the intersection of U. S. Highway 190 and 15th Street in the city of Kinder, Louisiana. At this location Highway 190 is a two-lane, two-way thoroughfare running east and west and entering the city from the east. 15th Street is blacktopped and enters Highway 190 from the south, forming a "T" intersection. The speed limit on Highway 190 is 60 mph outside the city. It reduces *108 to 45 mph in the area of this intersection and to 35 mph a short distance to the west thereof.
The version of the accident given by Patricia Fontenot and her sister, Sheila, is that they had been to a dressmaker east of town and were returning west on Highway 190 en route to their home, which is located on 15th Street. Patricia saw defendant's large truck and tank trailer in her rear view mirror, even before she entered the city limits of Kinder. She said it was following her very close. On reaching the 45 mph speed zone she slowed. When within a block of the intersection she slowed more and turned on her left turn signal light. At this point defendant's truck was following only about 7 feet behind, but was still in its own lane of traffic. On reaching a point about 10 yards from the intersection she again looked in her rear view mirror and saw the truck was right behind her in the passing lane. The truck then appeared to try to cut back into its own lane and hit the left rear of the Fontenot automobile. Patricia and her passenger testified they never actually started the execution of a left turn, never crossed the center line of the highway, and were still in the westbound lane of traffic when struck by defendant's truck.
This version of the accident was substantially corroborated by plaintiff's witness, Mr. Oreleis Adrepont, who was following defendant's truck. He saw the truck attempting to pass the car. Then suddenly, because of an oncoming vehicle, the truck swung back to its right and struck the car.
Defendant's truck driver died before the trial and hence was unavailable to testify. Defendant's only witness as to the cause of the accident was Mr. Curley LaFleur, City Marshall of Kinder, who arrived at the scene 30 or 40 minutes after the collision. He found defendant's truck on the south shoulder of Highway 190, with its rear end about at the ditch along the west side of 15th Street; the right front of the truck was jammed up against the left side of the Fontenot vehicle, which was located partially in the eastbound lane of Highway 190 and partially on the south shoulder; skid marks led from the back of the truck in a northeasterly direction a distance of 132 feet to the center of the highway. Dirt and debris was scattered generally along the path of the skid marks left by defendant's truck. In further locating the origin of the skid marks, LaFleur said there was a private driveway leading off of Highway 190 to the north, about 25 feet east of 15th Street. The skid marks started east of this driveway and in about in the center of Highway 190.
One of the most seriously contested issues in the case is the admissibility of testimony by LaFleur as to statements made by defendant's truck driver at the scene. Defendants contend these statements are admissible as part of the res gestae. Plaintiff objected strenuously that these statements are hearsay and are not admissible as res gestae because they were made about 40 minutes after the accident occurred. The trial judge overruled the objection and allowed LaFleur to testify that defendant's truck driver stated he thought the Fontenot girl was going to turn right (apparently into the private driveway), but that when he started to pass, she suddenly turned left into his path.
We agree with the plaintiff that these statements by defendant's truck driver were not part of the res gestae. The statements were made about 40 minutes after the accident. There had been ample time for the truck driver to deliberate and consider the effect of his statements. The evidence does not show the statements were made in a moment of tenseness or under circumstances which would reasonably preclude the possibility of design, deliberation and fabrication. Donaldson v. Riddling's Succession, La.App., 145 So. 804; Holland v. Owners' Automobile Insurance Company, La.App., 155 So. 780; Micheli v. Toye Bros. Yellow Cab Company et al., La.App., 174 So.2d 168; Larocca v. Ofrias, 231 La. 292, 91 So.2d 351; and W. H. Hodges & Company v. Wood, 230 La. 525, 89 So.2d 60.
*109 However, disregarding the objectionable hearsay statements, the evidence is sufficient for us to find the facts. The physical evidence, as set forth in the uncontradicted testimony of Mr. LaFleur and as shown by the pictures of the damaged automobile, indicates that the Fontenot vehicle had commenced a left turn and was struck in the passing lane. The skid marks began near the center of Highway 190 and ran in a southwesterly direction, entirely in the passing lane, to the south shoulder where the truck stopped. Dirt and debris was scattered along these skid marks. The photographs show the Fontenot vehicle was struck about at the center of its left side. Patricia Fontenot testified they were struck when they were about 10 yards from the intersection. At this point the truck's skid marks were well within the passing lane. These facts can lead to no other conclusion but that Patricia had started her left turn and crossed the center of Highway 190, into the passing lane, at the time of the collision.
Under this finding of fact as to the way in which the accident happened, the first issue is whether defendant's truck driver was negligent in passing at an intersection. The question here is whether this particular road junction constituted an intersection within the intendment of LSA-R.S. 32:76, which provides in pertinent part:
"A. No vehicle shall at any time be driven to the left side of the highway under the following conditions:

* * * * * *
"(2) when approaching within one hundred feet of or traversing any intersection or railroad grade crossing;"
LSA-R.S. 32:1(19) defines "intersection" in part as follows:
"(a) The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another * *."
LSA-R.S. 32:1 (44) defines "roadway" as that portion of a highway which is used for vehicular traffic. LSA-R.S. 32:1 (17) defines "highway" as the entire width "of every way or place of whatever nature publicly maintained and open to the use of the public for the purpose of vehicular travel * * *."
Thus, under a literal reading of the statutory provisions, the junction of any roads, streets or highways which are publicly maintained and open to use by the public constitutes an intersection. The statutes make no distinction, but the courts have done so. A considerable line of jurisprudence holds that some highway junctions are not "intersections". The facts of each case must be examined. Circumstances considered include the character and appearance of the junction, the width and type of each of the intersecting thoroughfares and the presence or absence of any signs or markings.
There are many cases holding the junction of a hard surfaced state highway with a narrow, unmarked, gravel or dirt road does not constitute an intersection, within the meaning of the statute. Ardoin v. Chachere, 207 So.2d 574 (La.App. 3rd Cir. 1968) involved the junction of a hard surfaced state highway with an unmarked gravel road 15 to 20 feet in width. United States Fidelity & Guaranty Company v. Duet, 177 So.2d 302 (La.App. 1st Cir. 1965) considered a narrow, unmarked lane, entering a hard surfaced state highway. Crane v. London, 152 So.2d 631 (La.App. 2nd Cir. 1963) involved the intersection of U. S. Highway 84 with a narrow, unmarked dirt road in a rural area. See also Sonnier v. Great American Insurance Company et al., 134 So.2d 363 (La.App. 3rd Cir. 1961); Davis v. Southern Farm Bureau Casualty Insurance Company, 134 So.2d 366 (La.App. 3rd Cir. 1961); Babineaux v. Sims, La.App., 111 So.2d 848; Dukes v. Kirkwood, La.App., 105 So.2d 318; Brown & Williamson Tobacco Corporation v. Baumgardner et al., La.App., 92 So.2d 107; Nichols v. Everist, La.App., *110 80 So.2d 199; King v. Willis, La.App., 75 So.2d 37; and Dudley v. Surles, La.App., 11 So.2d 70.
On the other hand, these cases found the road junction did constitute an "intersection" within the meaning of the statute: Normand v. American Home Assurance Company, 171 So.2d 804 (3rd Cir. 1965) involved the intersection of a blacktopped state highway with "Hayes Cemetery Road", which was also blacktopped and marked with a sign indicating its name. The junction could be clearly seen by approaching motorists. In Barras v. Fidelity & Casualty Company of New York, 152 So.2d 74 (La.App. 3rd Cir. 1963) we held the junction of a parish shell road with a hard surfaced, heavily traveled state highway was an intersection. Ulmer v. Travelers Insurance Company, 156 So.2d 98 (La.App. 1st Cir. 1963) involved the junction of a state highway, 24 feet wide, on which the speed limit was 60 mph, with a blacktopped intersecting street in a "semiresidential" area near Baton Rouge. The court held this was an intersection. The recent case of Hoover v. Wagner, 189 So.2d 20 (La.App. 1st Cir. 1966) considered the junction of two hard surfaced streets in the city of Baton Rouge. One street was only 2 or 3 blocks long and served merely as an access to a few residences. However, the court held that the road junction was clearly visible to approaching motorists and should have been recognized as an intersection.
Scott v. Hardware Dealers Mutual Insurance Company, 189 So.2d 29 (La.App. 1st Cir. 1966) involved the junction of a hard surfaced state highway near Baton Rouge with a dead end gravel road, approximately 30 feet in width, leading into a residential area. There was no sign indicating an intersection, nor was there a yellow no passing line on the state highway. However, the gravel street was well defined, readily observable to approaching motorists, 30 feet in width and obviously led into a residential area. The court mentioned that even though this was in the open country, rather than in a municipality, it must be considered as an intersection.
In the present case the trial judge correctly charged the jury as to the law concerning intersections, substantially as we have set it forth above. However, the jury committed manifest error in apparently finding that this road junction did not constitute an intersection. As stated above, U. S. Highway 190 enters the city of Kinder from the east and the speed limit is reduced from 60 mph to 45 mph by the time the highway reaches the road junction in question here. 15th Street, as shown by the photographs in evidence, has a blacktopped surface, about 20 feet in width, sufficient for two cars to pass, with shoulders on each side of about 5 feet in width. The total width of the street from ditch to ditch is about 30 feet. There is an even wider opening, on which gravel has been placed, into the state highway. Although there is no sign on the state highway indicating this as an intersection, nor is there a yellow no passing line for west bound traffic, there is a stop sign for traffic leaving 15th Street and entering the state highway. 15th Street is easily observable to motorists approaching on the state highway at a sufficient distance to refrain from passing at this intersection. The street obviously is in a residential area of the city of Kinder.
Under the jurisprudence which we have discussed in detail above, this was an intersection within the intendment of LSA-R.S. 32:76, subd. A(2). This was not a narrow, unmarked gravel or dirt road entering a heavily traveled state highway in the open country. This was a hard surfaced street within the city limits of Kinder, readily observable to approaching motorists as a city street leading into a residential area. We have no difficulty in concluding it was an intersection.
Thus, defendant's truck driver was passing at an intersection in violation of LSA-R.S. 32:76, subd. A(2). This violation *111 of a traffic regulation was a substantial cause in fact of the collision. Defendant's driver was negligent.
The next issue is whether Patricia Fontenot, the driver of the Fontenot vehicle, was contributorily negligent in making a left turn. LSA-R.S. 32:104, subd. A provides in pertinent part that no person shall execute a left turn at an intersection "unless and until such movement can be made with reasonable safety." LSA-R.S. 32:104, subd. B requires that when a person intends to make a left turn he shall give a signal during not less than the last 100 feet.
There is factual question as to whether Miss Fontenot turned on her left turn signal light as required. However, even assuming she gave the signal, we conclude she was negligent.
When a left turn is being made at a place other than an intersection, as for instance at a private driveway, the jurisprudence requires a very high degree of care. The driver executing such a left turn must not only give a proper signal but must also observe both oncoming and following traffic to ascertain that the turn can be made with safety. McCann v. Mercer, 191 So.2d 150 (La.App. 3rd Cir. 1966).
In judging the reasonable care required of a person making a left turn at an intersection, there is the added factor that, under certain circumstances, a motorist can assume that the following traffic will observe the law and will not pass at the intersection. See Breland v. American Insurance Company, 163 So.2d 583 (La.App. 2nd Cir. 1964) and the cases cited therein. However, if the motorist about to make the left turn sees or should see that a following vehicle is engaged in a passing maneuver, in close proximity to his own vehicle and at an intersection, he can no longer rely on the presumption that the following vehicle is going to obey the law.
We think Patricia Fontenot saw or should have seen that defendant's truck was going to pass at this intersection. As stated above, Miss Fontenot testified that the truck had followed very close behind her as she entered the city. When within a block of the intersection, she slowed to about 20 mph and turned on her left turn signal. At this point she saw defendant's truck following only about 7 feet behind her. She did not again observe the truck to her rear until she had started her left turn and had crossed the center line of the highway. By this time, the truck had started its passing maneuver and was much too close for the Fontenot vehicle to make a left turn in "reasonable safety" as LSA-R.S. 32:104, subd. A requires. Had Miss Fontenot taken reasonable precautions to observe the truck, which she admits was very close behind her, before commencing her left turn, she could have remained in her own lane and avoided the accident. It is our conclusion that Patricia Fontenot was guilty of negligence, which was a cause of the accident. Hence, recovery on her behalf is barred.
Her negligence is also imputed to her father, the plaintiff herein, and bars his recovery individually for medical expenses for both Patricia and Sheila, LaHitte v. Acme Refrigeration Supplies, Inc., 192 So.2d 172 (La.App. 4th Cir. 1966, writ refused).
However, plaintiff is entitled to recover as administrator of the estate of his minor daughter, Sheila Fontenot, for the physical injuries sustained by her while a guest passenger in the Fontenot vehicle. In the accident, which occurred on July 23, 1965, Sheila was thrown forward in the automobile and knocked unconscious. She regained consciousness in the hospital in Oakdale and complained of injuries to both knees, low back, head and groin area. Dr. Donald R. Vesley saw her initially and diagnosed multiple contusions and abrasions mostly of a minor nature, and a spraining injury in the area of the lumbar *112 spine. X-rays were negative for bone fracture. After 7 days in the hospital she was released, although her back pain had not subsided.
Dr. Vesley continued to treat the back sprain with drugs and ultrasonic treatments. Also, she developed a swelling in the groin area. She was hospitalized for another 8 days and a lymph gland in her right groin was surgically removed.
Generally, Dr. Vesley testified that Sheila's back sprain was slow to heal and required a great many drugs, shots and ultrasonic treatments. Her condition was complicated by anxiety and worry associated with the accident. Nevertheless, within 6 months after the accident all of her physical symptoms had disappeared, except for mild difficulty with the lumbar injury, which continued for a slightly longer period of time.
Due to her continued complaints, for which Dr. Vesley could find little objective cause, he referred her to Dr. James A. Brown, a neurosurgeon of Houston, Texas (but not a psychiatrist). He diagnosed nervousness, anxiety and depression caused by the accident.
Dr. Davidson H. Texada, Jr., a psychiatrist of Alexandria, Louisiana, examined Sheila on February 22, 1967, at the request of defendants. He stated she was suffering from mild anxiety, which was caused by the accident. However, she showed no significant psychiatric disorder, appeared to be functioning quite well and needed no psychiatric treatment. From the psychiatric examination, he decided it would be unnecessary to perform a complete neurological examination for any possible brain damage.
Dr. Normand Morin, an orthopedist, also examined Sheila in November of 1966 and found no residual orthopedic injury.
Under the circumstances, we think an award of general damages for Sheila's injuries in the sum of $5,000 is appropriate.
A final issue is whether defendants-appellees in the principal demand should have also appealed, or answered the appeal, to bring the third party demand before this court, in the event of a holding by us that both drivers were negligent. The record shows the pertinent portion of the jury verdict reads as follows:
"1. Was there any negligence on the part of Edrick M. Daigle which was the proximate cause of the accident? Answer "Yes" or "No" no (If answer is No, disregard all other questions.)
"2. Was there any negligence on the part of Patricia Fontenot which was the proximate cause of the accident? Answer "Yes" or "No" _____ (If this question is answered "Yes", disregard question 4.)"
Thus, the jury followed the trial judge's instructions and made no finding as to whether Patricia Fontenot was contributorily negligent. Plaintiff sued only the truck owner and its insurer. If these defendants were not liable, then Patricia's contributory negligence, if any, was not at issue in the principal demand. Also, if there was no recovery on the principal demand, there necessarily could be no rerecovery on the third party demand for contribution.
Although the jury verdict decided only that the truck driver was negligent, and did not rule on Patricia's negligence, the judgment signed by the district judge dismisses the third party demand in the following language:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment be and it is hereby rendered in favor of third party defendant, Traders & General Insurance Company, and against third party plaintiffs, Wanda Petroleum Company, Inc., and Pan American Fire and Casualty Company, dismissing the third party claims, with prejudice."
*113 Only the plaintiff appealed. There was no appeal nor answer to the appeal by the defendants in the principal demand or the third party defendant.
All parties have a right to appeal "to have a judgment of a trial court revised, modified, set aside or reversed by an appellate court." LSA-C.C.P. Article 2082. Appellees may also seek to have a judgment modified, revised or reversed as to the appellant, by filing an answer to the appeal. LSA-C.C.P. Article 2133. Jurisprudence has established that, with certain exceptions not pertinent here, an appellee's answer to the appeal permits relief only as against the appellant, and not as against another appellee. Howard v. Insurance Company of North America, 159 So.2d 560 (La.App. 3rd Cir. 1964). Thus, in the present case it was incumbent upon the defendant appellee in the principal demand to appeal in order to have the district court judgment modified, revised or reversed as to the third party defendant appellee.
However, the defendant appellee contends there was no adjudication of the third party demand, hence there was no necessity for an appeal and the case must be remanded to the district court for a decision on the third party demand. The argument is that the judgment signed by the district judge erroneously included a dismissal of the third party demand, as to which the jury verdict made no decision. Hence, the formal judgment is of no effect in this regard.
In support of this contention defendant appellee relies on McCoy v. Pacific Coast Fire Insurance Company, 248 La. 389, 178 So.2d 761 (1965). In that case plaintiff sought recovery from Pacific, the insurer under a fire policy, and alternatively from Montaldo Insurance Agency, which had sold the policy. Pacific filed a third party demand against Montaldo for contribution. The trial court rendered judgment on the merits dismissing plaintiff's suit as to both the insurer and the agency on the grounds that there was no coverage. There was no express ruling on the third party demand. Only the plaintiffs appealed. There was no appeal, or answer to the appeal, by the insurer or the agency. The court of appeal affirmed the trial court judgment. However, the Supreme Court reversed and gave judgment in favor of plaintiffs and against the insurer, Pacific, for the sum of $16,000. As to the third party demand, the Supreme Court, with 2 justices dissenting, held that it could not grant relief on the third party demand and remanded it to the district court. The reasoning of the court is as follows:
"There being no appeal before us relating to the third party demand, we cannot adjudicate the issues between the parties to that demand. The third party demand is not here because the trial court retained jurisdiction of that remaining, incidental aspect of the case to adjudicate the issues it presented should the event upon which the third party demand was predicated occur by a reversal on appeal of the trial court's judgment between the principal plaintiff and the principal defendant. Article 1915 of the Code of Civil Procedure supports this conclusion for it provides: `A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:'"
Also pertinent to the present discussion is the dissent by Justice Sanders in the McCoy case. He thought that even though the formal judgment of the district court was silent as to the third party demand, it had nevertheless necessarily been adjudicated; a finding of no insurance coverage in the principal demand necessarily adjudicated a dismissal of the incidental third party demand; LSA-C.C.P. Article 1915 on partial judgments was not intended to apply here.
The instant case presents a refinement of the issue in McCoy. Here, the jury *114 verdict made no finding as to whether the insured of the third party defendant was negligent, but the formal judgment signed by the district judge expressly adjudicated and dismissed the third party demand. We find it unnecessary to decide whether the formal judgment of the trial court was irregular or improvident, as contended by the defendant. Even assuming for the sake of argument that the judgment was irregular or erroneous, it is nevertheless an adjudication by a court of competent jurisdiction on an issue which was before it. The judgment has effect until it is modified, revised or reversed by an appellate court. Hence, defendants should have appealed.
Relevant to the present discussion is the established jurisprudence that matters once adjudicated by a court of competent jurisdiction cannot be questioned by the parties or their privies if the judgment has become final, although the judgment may have been erroneous or irregular. Succession of Favalora, La.App., 169 So. 2d 197; California Company v. Price, 234 La. 338, 99 So.2d 743; Pitts v. Neugent, 187 La. 694, 175 So. 460. This also accords with the general rule in common law jurisdictions. 30A Am.Jur. 395-400.
We conclude the third party demand was adjudicated by the district court. No appeal having been taken therefrom, the third party demand is not before us. Accordingly, we are unable to grant any relief on the third party demand.
For the reasons assigned, the judgment appealed is reversed and set aside insofar as it denies recovery for the injuries to Sheila Fontenot. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Teovic Fontenot, as administrator of the estate of his minor daughter, Sheila Fontenot, and against the defendants, Wanda Petroleum Company, Inc., and Pan American Fire & Casualty Company, in solido, in the sum of $5,000, together with legal interest thereon from date of judicial demand until paid and all costs of these proceedings.
Except as herein reversed in part, the judgment is affirmed.
All costs in the lower court, as well as the costs of this appeal are assessed against the defendants, Wanda Petroleum Company, Inc. and Pan American Fire & Casualty Company.
Reversed and rendered in part, affirmed in part.

On Application for Rehearing.
En Banc. Rehearing denied.