219 So.2d 551 (1969)
Onedias MEAUX, Plaintiff-Appellee,
v.
Wilmer Ray HOFFPAUIR, Defendant-Third-Party Plaintiff-Appellee,
v.
Mrs. Allie HOFFPAUIR, widow of Rollie Hoffpauir, Third-Party Defendant-Appellant.
No. 2573.
Court of Appeal of Louisiana, Third Circuit.
February 14, 1969.
Rehearing Denied March 12, 1969.
Writ Refused May 5, 1969.
*552 Edwards, Edwards & Broadhurst, by Nolan J. Edwards, Crowley, for defendant-appellant.
Adam G. Nunez, Lake Charles, for plaintiff-appellee.
Marcantel & Cassidy, by Charles R. Cassidy, Jennings, for defendant-third-party plaintiff-appellee.
Before TATE, SAVOY, and CULPEPPER, JJ.
TATE, Judge.
The plaintiff Meaux had rented to the defendant tenant certain lands upon which to grow rice on a share basis. The tenant failed to raise a crop. Meaux sues to recover the value of his share of the crop had it been cultivated.
*553 Meaux obtained judgment against the tenant. At the same time, the tenant was granted judgment against a third-party, upon his third-party demand to recover from her any damages for which cast in the principal action. (The third-party demand was based upon the third-party defendant's failure to furnish water, causing the tenant's failure to grow his rice crop.)
The third-party defendant alone appeals. The central issue on the merits relates to this party's contention that she was not bound by an agreement with the tenant to furnish him water, for several reasons which will be set forth below. The plaintiff Meaux has answered the appeal.
Before setting forth the precise issues of the present appeal, we will first discuss related litigation in the context of which the present suit is based. These related suits were consolidated with the present for purposes of trial-decision and of appeal.

I.
The defendant tenant, Wilmer Hoffpauir, is one of several children of the late Rollie Hoffpauir and of his widow, Mrs. Allie L. Hoffpauir. Following the death of his father, Wilmer and his mother (Mrs. Allie) entered into a lease agreement by which Wilmer continued to farm 144 acres owned by or subject to the usufruct of his mother.
Disputes arose between the mother and the son. As a result, in 1965, the son sued to enjoin his mother from disturbing his possession, while the mother sued to evict the son from the leased premises.
These cross-suits resulted in a stipulation of December 21, 1965 between mother and son. By it, the mother recognized the the son's leasehold rights and also agreed to furnish him water for rice cultivation purposes, while the son agreed to furnish rentals by way of crop shares for the lands leased or the water furnished.
Pertinently, under the terms of the stipulated agreement of December 21, 1965, Mrs. Allie Hoffpauir, the mother, obligated herself to furnish water not only for the land leased by Wilmer from her, but also for lands rented by him within the immediate vicinity.[1] These include the lands of the present plaintiff (as well as of other lessors who likewise sue for the failure of Wilmer to make his 1966 rice-crop).
By the present suit, Meaux sues Wilmer[2] for the damages caused him because of Wilmer's failure to grow a rice crop during the 1966 crop year. Wilmer filed a third-party demand against his mother to recover from her any damages Meaux recovered in the principal action.
Consolidated with the present suit are two others by other landowners from whom Wilmer had similarly rented land for rice cultivation purposes. The issues, allegations, and pleadings in these companion suits are identical to those of the present suit, the only differences being in the acreages leased and values of the rice crops lost. The opinion in this suit will dispose *554 of all issues in these two companion appeals: See Hebert v. Hoffpauir, La.App., 219 So.2d 557, and Favalora v. Hoffpauir, La.App., 219 So.2d 558, decided this day.

II.
The trial court awarded the plaintiff judgment on the main demand against the tenant Wilmer. The evidence clearly supports the amount awarded, being the value of the plaintiff lessor's share of the estimated crop lost, based upon Wilmer's estimated average production and the prevailing prices of the crop-year.
Neither the plaintiff nor the defendant appealed from judgment on the main demand. The mother, third-party defendant, was held liable to Wilmer for amounts recovered by the plaintiff. She alone appeals.
Thus, the primary issues as to the merits are posed by the mother's appeal from the judgment against her as third-party defendant. The son's third-party demand against her is based upon his contention that she had breached her obligation to furnish water to him for his use in cultivation of these lands, when requested to do so by him.
The mother's chief defense to the third-party demand is that she was no longer obligated to furnish water, since Wilmer had allegedly abrogated the agreement by ordering her workers off the lands he had rented.[3]
We agree with the trial court that her evidence as to these alleged breaches is vague and insubstantial (even pretermitting whether, if proved, they would have justified a failure to furnish water).
For instance, one incident involves a family quarrel at a time when the planting season was almost ended, which obviously did not involve a breach of Wilmer's obligations. The only other specific incident alleged involves Wilmer's peacefully stopping workmen from constructing a fence across the field on property he had leased from his mother. As it turned out, Wilmer was correct in his assertion that the fence was being constructed at the wrong place and would deprive him of some of the property included within his lease agreement. Without further consultation with Wilmer, the mother unilaterally determined this was a lease violationincorrectly, as the trial court found.
The evidence therefore does not prove any breach by the son of his lease obligations and reflects no excuse for the mother's failure to comply with her own stipulated agreement to furnish him water. Actually, at the trial, she testified that she never refused to furnish water to him per her agreement to do so, simply assigning a variety of vague and unsubstantiated reasons for her failure to turn on the pump and send water`down his canals in accord with his repeated requests.
We should perhaps mention another contention of the mother, to the effect that the son should have minimized his crop loss by securing water from other sources. However, as the trial court found, it was not practical for him to do so after the mother finally failed to furnish water to him, after he had repeatedly prepared his fields for rice cultivation upon assurances from her each time that water would be forthcoming. There was not sufficient time to obtain rights of ways to construct canals for water from elsewhere, assuming Wilmer could have obtained such rights of ways or other water.
We therefore find that the evidence supports the trial court's determinations *555 in this and the related suits that the son did not breach any lease agreement, and that the mother is liable in damages to him on his third-party demand for the rice crops lost because of her failure to furnish him water per the stipulated agreement between her and her son.

III.
By answer to the appeal, the plaintiffs-appellees in this and the companion lessor-damage suits (Hebert and Favalora) pray (a) that the awards in their favor be increased, (b) that the mother should be assessed with damages for frivolous appeal, and (c) that the court should hold the mother solidarily liable to them along with the son, as demanded by their petitions. (The mother had been held liable to the son only on the son's third-party demand against her.)
In the procedural stance of this litigation, the plaintiff-appellees in this and in the companion appeals cannot obtain such relief by their answers to the appeal taken by the third-party defendant (alone).
As will be set forth more fully, the plaintiffs-appellees are attempting by their answers to secure relief against parties who did not appeal (i. e., are not appellants) from judgment in the principal action. However, an answer to the appeal is a pleading by which an appellee may have the judgment modified or revised only as against an appellant. LSA-C.C.P. Art. 2133. As amended by Act 129 of 1968, this article provides: "* * * The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer."[4]
To restate the procedural facts of the present suit: The plaintiff landowner sued both the tenant (the son, Wilmer) and the latter's mother (Mrs. Allie Hoffpauir) for damages arising out of Wilmer's failure to raise rice per his lease with them, which were caused by Mrs. Allie's failure to furnish Wilmer water per her agreement with him. This principal action for the enforcement of the plaintiff's legal rights, if any, against these defendants was the only action to which the plaintiff was a party. ("A civil action is a demand for the enforcement of a legal right. * * *" LSA-C.C.P. Art. 421.)
In this principal action, the plaintiff secured judgment against Wilmer. Wilmer did not appeal said judgment, nor did the plaintiff. The judgment disposing of the demand by the plaintiff against Wilmer is therefore final and determinative between the parties, since neither party appealed within the legal delays. Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138. Appeals as to other demands by or against other parties are immaterial with regard to, and do not change, this effect of the failure of an appeal by any party to a demand. Fontenot v. Pan American Fire & Casualty Co., La.App. 3 Cir., 209 So.2d 105. The plaintiff-appellee cannot, therefore, obtain an increase in the award of damages to him in the principal action.
The plaintiff-appellee apparently contends, however, that he may use an answer to the appeal to obtain relief against Mrs. Allie Hoffpauir, since she is an appellant. However, she appeals only as third-party defendant from the judgment on the third-party demand against her and in favor of her son, Wilmer. Thus, she and her son Wilmer are the only parties to this appeal.
The plaintiff-appellee is not a party to this appeal. The third-party demand is an incidental action between the mother *556 and the son (only). The plaintiff in the principal action is not a party appearing in nor required to plead in this incidental action. LSA-C.C.P. Arts. 1031-1040. Parties to this third-party demand include only those expressly joined, LSA-C.C.P. Arts. 1111-1113, 1116, or who intervene, LSA-C.C.P. Art. 1091.[5]
For pleading purposes, the incidental action is independent of the principal action. LSA-C.C.P. Arts. 1031-1040; cf., Art. 1156. A final judgment may dispose of both the principal and the incidental actions, or separate judgments may be rendered as to each. LSA-C.C.P. Arts. 1038, 1915.
In either event, however, and also if the judgment is silent as to disposition of one demand or the other, an appeal brings before the reviewing court only a demand in which the judgment is appealed. An appeal as to one demand does not bring before the court also all other principal and incidental demands tried in the suit. See: McCoy v. Pacific Coast Fire Insurance Co., 248 La. 389, 178 So.2d 761; Fontenot v. Pan American Fire & Casualty Co., La. App. 3 Cir., 209 So.2d 105. See also LSA-C.C.P. Art. 2087 (as amended by Act 92 of 1962), and 1962 Official Revision Comment (c).
Thus, the mother's appeal from the judgment on the third-party demand does not bring before the court also the main demand asserted by Meaux against the son. As to Meaux, it is immaterial that the mother appealed from the judgment in favor of the son, since Meaux had obtained judgment in favor of the son and can look to him (only) for satisfaction of his (Meaux's) judgment. Meaux's prayer by his answer for damages for frivolous appeal cannot be considered, because he is not a party to the mother's appeal; but, actually, his right to recover from the son was not affected nor delayed by this appeal.
Reverting to Meaux's apparent contention that he might be entitled to recover against the mother on the main demand: this main demand is not before us on appeal, no appeal having been taken from the judgment disposing of it. Assuming otherwise, however, would not afford Meaux relief against the mother through his answer *557 to the appeal seeking to hold her solidarily liable with the son:
The plaintiff Meaux is at the most an appellee before this court, but with regard (only) to the disposition of the main demand between him and the son Wilmer. In the disposition of this main demand, however, the trial court did not render judgment against the codefendant mother. Viewed most favorably to the plaintiff Meaux, the mother then is at the most also only an appellee, insofar as the main demand asserted by Meaux against both the mother and Wilmer. Therefore, Meaux, as appellee, cannot by answer to the appeal have the judgment in the main demand amended so cast his co-appellee solidarily with the son. LSA-C.C.P. Art. 2133; Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138; Lomenick v. Hartford Accident & Indemnity Co., La. App. 3 Cir., 189 So.2d 731.
As a matter of fact, however, the trial court actually did not dispose the plaintiff's demand against the mother. Having awarded the plaintiff judgment against the son, the trial court in its reasons stated it saw no need to discuss the complex question of whether the mother was liable directly to the plaintiff by virtue of a stipulation pour autrui. (In fact, the plaintiff suggests no practical reason why the judgment in his favor against a solvent defendant is not satisfactory to him.)
The final written judgment of the trial court disposing of the main demand and awards judgment in favor of the plaintiff and against the son, but it is silent as to affording or denying him any relief against the co-defendant mother. Under these circumstances the demand of the plaintiff directly against the defendant mother has not been disposed of by a final judgment; it is still pending below. McCoy v. Pacific Coast Fire Insurance Company, 248 La. 389, 178 So.2d 761; Coleman v. Cousin, 128 La. 1094, 55 So. 686; Gay v. Gay, La.App. 3 Cir., 193 So.2d 537. Cf., also: Fisher v. Rollins, 231 La. 252, 91 So.2d 28.
For all of these reasons, we cannot afford the plaintiff-appellee any of the relief he requests by his answer to the appeal.

Decree.
For the foregoing reasons, we affirm the judgment against Mrs. Rollie (Allie) Hoffpauir, the third-party defendant-appellant. All costs of this apeal are to be paid by this appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] The mother argues that this obligation was modified by a subsequent stipulation agreement of April 14, 1966, following further court dispute. The April clarification allegedly described the lands to be serviced as referring only to lands rented by Wilmer from the Broussard estate. However, reference to the April stipulation will show that the clause in question referred only to the division of the rice acreage allotment belonging to the Broussard tract, Tr. 51, not to any water rights agreement. Furthermore, the preamble to the April clarification expressly states that it was only an "additional agreement" that "will not set aside the previous agreement * * * of December 21, 1965." Tr. 50.
[2] Meaux also joined the mother as codefendant, on the theory, inter alia, that her agreement to furnish water for his lands was a stipulation pour autrui in his (Meaux's) favor, entitling him to recover damages directly from her for its breach. The trial court did not pass upon this demand; nor do we, for reasons set forth in part III of this opinion below.
[3] This contention is also the basis of her demand in yet other related litigation, consolidated with the present for appeal, that the stipulated lease agreement of December 21, 1965, be held breached and cancelled. See Hoffpauir v. Hoffpauir, La.App., 219 So.2d 558, and Lounsberry v. Hoffpauir, La.App., 219 So.2d 559, rendered this date.
[4] The italicized words were added by the 1968 amendment to clarify the article's meaning. However, no change is reflected from the meaning prior to the 1968 amendment. See Howard v. Insurance Company of North America, La.App. 3 Cir., 159 So. 2d 560.
[5] However, the third-party defendant has the right to assert any defenses of the third-party plaintiff against the plaintiff in the principal action. LSA-C.C.P. Art. 1115.

This provision is derived from Federal Rule of Civil Procedure 14, so therefore the federal interpretations and applications are persuasive. Kay v. Carter, 243 La. 1095, 150 So.2d 27. The purpose of the provision is to protect the third-party defendant from the plaintiff's failure or neglect to assert a proper defense, 3 Moore, Federal Practice, Sections 14.01 [3], 14.13 (2d ed., 1968); 1A Barron & Holtzoff, Federal Practice and Procedure, Section 426, footnotes 64 et seq. (Wright ed., 1960). He is not, however, a party to an appeal in the main demand unless such has been amended to include him, despite his right to advance defenses. Moore, Section 14.19, footnote 4, citing and explaining Falls Industries, Inc. v. Consolidated Chemical Industries, Inc., 258 F.2d 277 (CA5th. 1958).
While no decision could be found on the question, in view of Article 1115's intent (and in the context of other provisions favoring finality of judgments in the absence of appeal by an affected party to the demand, see discussion below), its effect with regard to the present litigation would be to permit the third-party defendant upon her appeal to argue, inter alia, that the trial court erred in awarding judgment against the third-party plaintiff (i. e., the main-demand defendant). If successful in this contention, the judgment on the third-party demand could be reversed; however, the judgment on the main demand, although erroneous, would still be final and would not be affected by the successful outcome of her own appeal as to this judgment on this different (third-party) demand. See, e. g., Fontenot v. Pan American Fire & Casualty Co., La.App. 3 Cir., 209 So.2d 105.