CULPEPPER, Judge.
This is a suit for damages arising out of an automobile accident. The plaintiff, Mrs. Cheryl W. Spell, was turning left at a T-intersection in the City of Lake Charles. She was struck by the defendant, George J. Cavys, who was passing at the intersection. From an adverse judgment, defendants appealed.
The substantial issue is whether Mrs. Spell, the left-turning motorist, was con-tributorily negligent.
The accident occurred at the intersection of Common and Contour Streets. Common Street, also known as the Gulf Highway, runs north and south, and is intersected on its west side by Contour Street. Both are two-way, two-lane paved streets.
The date was December 29, 1968, and the weather was clear and dry. There is *134 some question as to the exact time of day. The police officers who investigated the accident testified they received the call on their patrol car radio at 5:45 p. m. A passenger in defendant’s vehicle testified he telephoned the police a few minutes after the accident. Weather Bureau Records introduced in evidence show that the sun set at S :21 p. m. on December 29, 1968. Both drivers testified they had their headlights on at the time of the collision. We conclude the accident occurred a few minutes before 5 :45 p. m. and that it was not completely dark but was what some of the witnesses termed “dusk.”
Both vehicles were proceeding in a northerly direction on Common Street. Mrs. Spell was in the lead and intended to turn left at Contour. Her version of the accident is that when she reached a point, about ISO feet south of the intersection, she turned on her left turn signal light and looked in her rear view mirrow. She saw no car and no lights approaching from the rear. Mrs. Spell then slowed her vehicle and proceeded to make a left turn. While in the south bound lane of Common Street, the left center of her vehicle was struck by the right front of the defendant’s automobile, which was engaged in a passing maneuver.
Mr. Cavys and his two sons were returning from a duck hunt. They entered the city on Common Street and were proceeding in a northerly direction at a speed of 35 to 40 miles per hour. Mr. Cavys testified he saw the slower moving Spell vehicle ahead and commenced a passing maneuver. He did not blow his horn or blink his lights. Cavys says he saw no left turn signal given by plaintiff and that he was almost even with her vehicle before she commenced a left turn. When plaintiff turned left, defendant applied his brakes, leaving skid marks measured by the investigating officers to be about 40 feet in length. However, despite his efforts the collision occurred.
Under the facts we have no difficulty in concluding that defendant was guilty of negligence constituting a legal cause of the accident. He was passing at an intersection in violation of the traffic code of the city of Lake Charles and LSA-R.S. 32:76.
Plaintiff contends defendant was also negligent in failing to have his headlights on at the time of the accident. Since this issue is crucial in determining whether plaintiff was contributorily negligent for failing to see defendant’s vehicle approaching from her rear, we will discuss it in some detail. The Highway Regulatory Act requires automobiles to have their headlights on between sunset and sunrise, LSA-R.S. 32:301 and 303. On the date of the accident, December 29, 1968, sunset was at 5:21 p. m. As stated above, the accident occurred a few minutes before 5:45 p. m. Certainly it occurred after sunset and defendant was required by the statute to have his headlights on.
Mrs. Spell testified that before turning she looked in her rear view mirror and saw no headlights approaching from the rear. Defendant testified that he had turned on his headlights while returning to the city from his duck hunt, and he stated positively that after the accident he turned them off. Sammy Cavys, defendant’s son, stated he did not remember when his father turned the lights on but he did remember him turning them off after the accident. Robert Allen, one of the officers who investigated the accident, said this about defendant’s headlights: “I don’t believe they were on. I couldn’t say.” Mr. Robert Voltz, plaintiff’s friend and neighbor who went to the scene after the accident, testified positively that defendant’s headlights were not on when he arrived. Joseph Savoy, the other officer who investigated the accident, testified that defendant’s parking lights were on, but he was not sure about the headlights.
In his written opinion the trial judge stated:
“However, the Court has a further question, and this question concerns whether Mr. Cavys’ lights were on at the time of *135 the accident. Mr. Cavys testified that he turned the lights off after the accident. The Court has some serious question in its mind concerning whether Mr. Cavys turned the lights off after the accident, in view of the fact that the Court believes that he may have been, and probably was, more concerned with and did check concerning the injuries Mrs. Spell may have had, and I’m sure he was concerned with whether his boys may or may not have had injuries.”
We construe the language used by the district judge as a finding of fact that defendant did not turn his lights off after the accident and hence they were not on at the time of the collision. It is admittedly a close factual issue, as to which .our decision ultimately rests on the impression received by the trial judge.
The next issue is whether plaintiff, Mrs. Spell, was guilty of contributory negligence. The applicable statute, LSA-R.S. 32:104, provides in pertinent part that no person shall turn a vehicle at an intersection “until such movement can be made with reasonable safety.” and then only after giving a proper signal for not less than the last 100 feet.
In the recent case of Fontenot v. Pan American Fire & Casualty Company, 209 So.2d 105 (La.App.3rd Cir. 1968), writ of certiorari refused, we construed the requirement of “reasonable care” under the above cited statute as follows:
“When a left turn is being made at a place other than an intersection, as for instance at a private driveway, the jurisprudence requires a very high degree of care. The driver executing such a left turn must not only give a proper signal but must also observe both oncoming and following traffic to ascertain that the turn can be made with safety. McCann v. Mercer, 191 So.2d 150 (La.App.3rd Cir. 1966).
“(5) In judging the reasonable care required of a person making a left turn at an intersection, there is the added factor that, under certain circumstances, a motorist can assume that the following traffic will observe the law and will not pass at the intersection. See Breland v. American Insurance Company, 163 So.2d 583 (La.App.2nd Cir. 1964) and the cases cited therein. However, if the motorist about to make the left turn sees or should see that a following vehicle is engaged in a passing maneuver, in close proximity to his own vehicle and at an intersection, he can no longer rely on the presumption that the following vehicle is going to obey the law.”
Under the rationale of the Fonte-not case, Mrs. Spell had a right to rely on the presumption that defendant would obey the law and would not attempt to pass at an intersection, until she saw or should have seen that he was not. Since we have already concluded it was “dusk” dark and defendant did not have his headlights on, we have little difficulty in finding Mrs. Spell was not negligent in failing to see defendant’s vehicle was about to pass her.
Furthermore, a clear preponderance of the evidence shows Mrs. Spell gave a timely left turn signal. She testified she turned on her left turn blinker light for the last 150 feet. At least 3 witnesses said the blinker was still operating after the accident.
The quantum of the award is not an issue on appeal.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants appellants.
Affirmed.