242 So.2d 32 (1970)
William M. SMITH
v.
Owen C. GIRLEY et al.
No. 8080.
Court of Appeal of Louisiana, First Circuit.
November 16, 1970.
Rehearing Denied December 21, 1970.
Writ Granted January 18, 1971.
*34 W. Shelby McKenzie, of Taylor, Porter, Brooks & Phillips, and C. Alvin Tyler, Baton Rouge, for appellant.
Burrell J. Carter, Greensburg, John S. White, Jr., Baton Rouge, and William M. Quin, Kentwood, for appellees.
Before LANDRY, ELLIS and BLANCHE, JJ.
LANDRY, Judge.
This action is the product of an automobile accident which occurred at approximately 11:00 P.M., May 18, 1968, on Louisiana Highway 43, about five miles north of Greensburg, Louisiana. At the site, the highway is a two-lane blacktopped road with little or no shoulders. When the accident occurred, a Ford Falcon automobile belonging to William D. Hurst was stalled in the southbound lane, facing southerly. Plaintiff William M. Smith, a Deputy Sheriff of St. Helena Parish, summoned to aid the stalled vehicle, arrived in a 1966 Chevrolet Impala which belonged to the Sheriff's Office. Plaintiff parked his vehicle, facing northerly, directly in front of and approximately one foot from the disabled automobile. While Smith was standing between the two vehicles attempting to start Hurst's car by using a battery jumper cable, defendant Owen C. Girley, traveling south, ran into the rear of the Hurst car. The impact pinned plaintiff between the Falcon and the Impala. Plaintiff sustained severe, permanent and disabling injuries.
Plaintiff instituted suit against Girley, Travelers Insurance Company (Travelers), insurer of the Sheriff's car under an uninsured motorist clause, and Hartford Accident & Indemnity Company (Hartford), insurer of Smith's personally owned vehicle under a policy containing uninsured motorist protection. The trial court rendered judgment in favor of plaintiff against Girley and Travelers in solido in the sum of $201,231.53. Travelers' liability being limited to $5,000.00 in accord with its policy limits. On its third party demand against Girley, Travelers was granted judgment for the amount in which it was cast to Smith for personal injuries and for the *35 additional sum of $434.94 paid the Sheriff's Office for physical damage to the Impala. Plaintiff's claim against his own insurer, Hartford, was rejected. Travelers appealed contending (1) The trial court erred in finding Girley liable; (2) plaintiff's claim should have been barred because of contributory negligence; (3) the lower court should have held Hartford's uninsured motorist clause solely applicable, and (4) Hurst alone should have been held responsible for the accident. Girley also appealed disclaiming all responsibility for the accident and alternatively contending plaintiff should be denied recovery because of contributory negligence. Plaintiff did not appeal rejection of his claim against Hartford. Plaintiff did, however, answer the appeals of Travelers and Girley and therein prayed solely for reversal of the judgment rejecting his demands against Hartford.
We initially note we must dismiss plaintiff's answer to the appeals of Girley and Travelers insofar as it purports to constitute an appeal against Hartford. Failure of a party to appeal when an appeal is necessary to obtain relief against a litigant as to whom one's claims have been rejected strikes at the very foundation of the right to appeal and raises a jurisdictional question. Howard v. Insurance Company of North America, La.App., 159 So.2d 560. Lack of jurisdiction of appeal may be noted by an appellate court on its own motion. Thompson v. Bamburg, 231 La. 1082, 93 So.2d 666.
Our jurisprudence appears to be in conflict regarding the question presented. Lomenick v. Hartford Accident and Indemnity Co., La.App., 189 So.2d 731, dealt at length in dicta with the issue before us. Lomenick suggests that the Supreme Court decision in Emmons v. Agricultural Insurance Company, et al., 245 La. 411, 158 So.2d 594, dictates that in matters of this instance the appeal must be upheld. We disagree with this reasoning because we interpret Emmons, above, as standing merely for the proposition that an appeal by a co-defendant from an adverse judgment brings all other dismissed co-defendants before the appellate court insofar as the appealing co-defendant is concerned, notwithstanding plaintiff has failed to appeal dismissal of plaintiff's claims against the dismissed parties. The appeal by the co-defendant in these instances produces this same effect regardless of whether or not the appealing co-defendant filed third party claims against his co-defendants in the lower court. Emmons, above. The rationale of the Emmons rule prevents plaintiff from controlling the effect of an appeal as regards the rights of defendants and also eliminates multiple actions, ends which the law favors.
The stated rule, however, does not mandatorily require that plaintiff is entitled to relief as against a co-defendant with respect to whom plaintiff has neither appealed nor answered the appeal of such a co-defendant. We note that in Lomenick, above, our brothers of the Third Circuit expressed the view that plaintiff's answer to a co-defendant's appeal does not ordinarily entitle plaintiff to relief against another appellee. Cited in support of this proposition were Howard v. Insurance Company of North America, La.App., 159 So.2d 560, 25 La.L.Rev. 448 (1965); McKnight v. Scott, La.App., 130 So.2d 681. See also Placid Oil Co. v. North Central Texas Oil Co., 206 La. 693, 19 So.2d 616.
We note, however, that this court reached a contrary result in Fussell v. United States Fidelity and Guaranty Co., La.App., 153 So.2d 911, which cites only LSA-C.C.P. Article 2133 as authority for the position taken.
Likewise, we are cognizant that in The Advertiser, Division of the Independent Incorporated v. Tubbs, La.App., 208 So.2d 340, the court, relying upon Lomenick, dealt with a situation identical to that before us. The conclusion was that a plaintiff-appellee must appeal independently to alter or modify a judgment affecting a previously dismissed defendant. Fontenot, et al. v. Pan American Fire & Casualty Co., *36 et al., La.App., 209 So.2d 105, and Meaux v. Hoffpauir, La.App., 219 So.2d 551, which deal with incidental demands, are in accord with Tubbs, above.
Also pertinent is LSA-C.C.P. art. 2133, which was amended by Act 474 of 1970, to read as follows:
"Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee's action."
It would appear that unquestionably Article 2133, above, as recently amended, changes the result achieved in Fontenot and Meaux, above, insofar as incidental demands are concerned. We find, however, that Act 474 of 1970, which applies exclusively to incidental actions, has no application to plaintiff's main demands and does not change the result announced in Tubbs where no incidental demands are concerned. Moreover, we are in accord with the views of the late Dean Henry G. McMahon, 25 La.L.Rev. 447-448 (1965) to the effect that the legislative intent inherent in LSA-C.C.P. art. 2133, is that plaintiff must appeal independently to secure relief against a dismissed co-defendant and that the appeal of a co-defendant enables review of a judgment dismissing a cause as to other co-defendants only insofar as the appellant is concerned. Upon further reflection, we conclude our decision in Fussell, above, was in error and we herewith expressly reverse our former position on the subject.
Under the circumstances, rejection of plaintiff's claim against Hartford is not before us for this appeal.
Morris Easley testified in essence that while en route to Denham Springs prior to the accident, he found Hurst's car stalled in the center of the southbound lane. He observed that the lights of Hurst's car were readily visible from a hill to the north. He passed the car without stopping and proceeded to Denham Springs, a distance of 39 miles. After remaining in Denham Springs for five minutes, he returned and passed the accident scene on his way home.
James Dwight Sanders encountered the Hurst car on the highway. He passed the stalled vehicle, turned around and noted its parking lights and tail lights were burning. He proceeded to Greensburg, Louisiana, where he reported the incident to Deputy Sheriff William L. Allen. He noted that approximately ten minutes lapsed from the time he observed the car and plaintiff's arrival at the scene.
Defendant Hurst's testimony is simply that his car stopped running. He left his headlights burning and remained in his car awaiting assistance.
Plaintiff testified the stalled car was reported to him by Allen and Sanders. Upon arriving at the scene, he found Hurst's car facing south in the southbound lane, its lights burning. Examination disclosed the driver to be intoxicated. He found the battery lacked power to start the engine. Smith then positioned his own vehicle one foot from the Hurst car facing northerly in the southbound lane. The emergency flashing red light atop the police vehicle was placed in operation and its headlights left on to provide visibility during Smith's attempt to start the stalled car. He observed that the shoulder of the road was only about 18 inches wide and immediately dropped off into a five or six foot ditch or gully. Smith did not place flares on the highway but did leave the parking lights burning on the Hurst car. He reasoned that the vehicle would be started in about five minutes with the aid of a jumper cable and then driven away. While engaged in the starting process, the accident occurred. In essence, Smith testified he was standing between the two vehicles preparing to move into position to *37 attach the cables to his battery. At no point in his testimony did plaintiff state he was actually standing on the bumper of the Sheriff's car. He was of the opinion that the hood of the Sheriff's car was raised about 18 inches and that of the Hurst car approximately 16 inches. Plaintiff also stated that Allen was assisting him by holding up the hood of the Hurst car. Plaintiff neither heard nor saw the approach of Girley's car. He was of the opinion that the flashing dome light atop his police vehicle and the tail lights on Hurst's car were readily visible to a southbound motorist.
Marshal William L. Allen, a city marshal and deputy sheriff, corroborated, in general, the testimony given by plaintiff. He heard the screech of brakes just before the impact and was knocked backwards into the roadside gully. He also stated that when struck, Smith had just completed attaching the jumper cable to the police unit and was in the act of fastening the device to Hurst's car. He testified that neither car hood was raised sufficiently high to block the view of the police car's dome light from the view of a southbound motorist. He also stated the tail lights of Hurst's car were burning when the collision occurred. Being further questioned as to Smith's position, Allen explained that he was unsure on this issue as he was wearing new bifocal glasses which reflected light into his eyes blurring his vision. For this reason, he was consciously attempting to avoid the car lights shining in his eyes.
Defendant Girley stated in effect that after topping the hill north of the accident scene, traveling approximately 65 miles per hour, he viewed a light of some kind ahead. He was puzzled by its nature and did not realize vehicles were stopped in his lane of travel. When he saw the vehicles he immediately applied his brakes but was unable to stop in time to avoid the accident. He had no recollection of informing the investigating officers that he saw a red light before the collision.
The accident was investigated by former State Trooper Aubrey Thomas Davis who testified that the weather was clear and the road dry at the time. The headlights of the police car were on when he arrived. The dome light of the police unit was not on but a check proved it to be operational. Investigation disclosed the point of impact occurred in the southbound lane of travel. The officer noted 218 feet of skid marks left by Girley's vehicle prior to the point of collision and 24 feet beyond. He found that the impact knocked both the Hurst car and the police vehicle a distance of 30 feet. He explained that physical evidence indicated to him that Girley was exceeding the lawful limit of 60 miles per hour. By pacing, he ascertained that the crest of the hill north of the scene of the accident was 1470 feet from the point of collision. He found damage to the left front of the hood of the Sheriff's car. We note that the batteries of both vehicles were on the right front side. Because Smith sustained serious injury to his right kidney, Davis concluded the hoods of both vehicles were in almost a down position at the moment of impact, otherwise Smith would have been struck in a region other than his kidney. Davis related that Girley told him that he, Girley, saw a flashing red light with two lights below it before the accident but that it did not dawn upon him that the lights represented a stationary vehicle. Davis also stated Girley told him that he was traveling 65 to 70 miles per hour and that he, Girley, was tired and sleepy. Davis found Hurst asleep on the front seat of his car in so intoxicated a condition, Hurst was unaware of his involvement in an accident.
The salient points of Davis' testimony were in effect confirmed by Deputy Sheriff Ocy Walker who assisted Davis in conducting the investigation. He further testified that Girley told him in the hospital following the accident that Girley saw a revolving red light prior to the impact but that it did not register with him what it represented until he was so close he could not stop in time to avoid a collision.
*38 Citing Vowell v. Manufacturers Casualty Insurance Company, 229 La. 798, 86 So.2d 909; Puissegur v. Loque, La.App., 113 So.2d 795, and Woods v. Employers Liability Assurance Corporation, La.App., 172 So.2d 100, defendant Girley argues he should be exonerated from liability under the rule that a motorist is not deemed negligent for failing to avoid a collision when suddenly confronted with an unexpected obstruction upon a highway. We are in accord with the holdings in the cited authorities but find them factually inapposite to the case at hand. We find, as did the trial court, the circumstances were such that Girley should have been alerted to the presence of an obstruction in his path.
A motorist is deemed to have seen that which could or should have been seen by an ordinarily careful individual under the same circumstances. Fortenberry v. McCoy, La.App., 233 So.2d 320.
The record establishes that a southbound motorist could and should have seen the parked vehicles approximately 1470 feet north of the accident scene. Prior to the accident Easley timely observed the lights of Hurst's vehicle when it was the only car parked on the highway. We find that the lights on Hurst's car were burning at the time of the accident. Plaintiff and Allen both so stated without equivocation. We also find that the flashing dome light on the police vehicle was visible to a southbound motorist at a distance of about 1470 feet. Girley's statements to plaintiff and Deputy Allen demonstrate that Girley saw the lights when he crested the hill. The flashing light on the police unit should have alerted him, as a reasonably prudent driver, to anticipate something out of the ordinary. Instead, he continued at an unabated speed of 65 miles per hour or more until he was so close he could not stop in time to avoid the accident. We find Girley negligent in driving at an excessive speed and failing to bring his vehicle under proper control under the circumstances.
It is contended that Hurst was negligent per se in violating LSA-R.S. 32:141 which requires a motorist to protect traffic when his vehicle is stalled on a highway. It is also argued that this same rule applies to plaintiff Smith who, in effect, became the operator of Hurst's car when Smith assumed the responsibility of removing the disabled vehicle from the highway. On this premise, it is maintained that Smith was guilty of contributory negligence barring his recovery.
In this respect Girley relies upon Dixie Drive It Yourself System of New Orleans, Inc. v. American Beverage Company et al., 242 La. 471, 137 So.2d 298. In the cited case it was held that a violation of LSA-R.S. 32:442, which required the operator of a stalled truck to set out flares, rendered the driver of the vehicle solely negligent when an inattentive driver struck the parked vehicle. Here the stalled vehicle could not be moved off the highway as the shoulders were totally inadequate to accommodate same. Under the circumstances, LSA-R.S. 32:141, subd. B required that Hurst remove the vehicle as soon as possible and protect traffic until the removal was accomplished. It is clear that Hurst took no action whatsoever to discharge either obligation.
His failure in this regard, however, does not constitute a proximate cause of the accident under the facts and circumstances of this case.
In Dixie Drive It, above, the Supreme Court held in effect that the purpose of the statute involved was to protect against the risk of an inattentive motorist approaching a stopped vehicle. We concede that this same reasoning is applicable to the duty imposed by LSA-R.S. 32:141. However, the rule of Dixie Drive It, above, is inapplicacle herein because, even though Hurst failed to protect traffic as required, the attending circumstances were such as to warn a reasonably prudent driver of an unusual *39 situation ahead. The visible flashing dome light of the police unit was, under the circumstances, ample notice to a southbound motorist of the presence of some exceptional circumstance calling for the exercise of more than ordinary care. That Girley failed to respond or react to the situation as a reasonably prudent driver is patent on the face of the record. Until it was too late to avoid the accident, Girley disregarded completely a warning that should have prompted the taking of more than ordinary care under the circumstances.
The charge of contributory negligence lodged against plaintiff Smith is likewise without foundation. Granted it was his obligation to exercise reasonable care under the circumstances. We find the record discloses he discharged this burden. The accident occurred on a rural highway. Traffic at the time was very light. Plaintiff anticipated that not more than five minutes would be required to start the disabled vehicle so that one of the officers could drive it away. He knew that the tail lights of Hurst's vehicle were burning and visible to southbound traffic. As a precaution, he placed in operation the flashing dome light of his own vehicle to warn approaching traffic of the presence of the two vehicles. Under the circumstances we find no negligence in his failure to take further precaution.
Plaintiff's claim against Travelers for recovery under the uninsured motorist clause in Travelers' policy is predicated upon his being an "insured", which term is defined therein as follows:
"(1) the named insured as stated in the policy (herein also referred to as the `principal named insured') and any person designated as named insured in the schedule and, while residents of the same household, the spouse of any such named insured and relatives of either;
(2) any other person while occupying an insured automobile; and
(3) any person, with respect to damages he is entitled to recover because of bodily injury to which this endorsement applies sustained by an insured under (1) or (2) above."
It is conceded plaintiff must come within the term "insured" as defined in the policy. Plaintiff claims he qualifies as such under Section 2 of the above definition in that he was "occupying" the vehicle at the time of the accident. The term "occupying" is defined in the policy as "in or upon or entering into or alighting from" the insured vehicle. Plaintiff relying on Carter v. Travelers Indemnity Co., La.App., 146 So.2d 257, and Hendricks v. American Employers Insurance Co., La.App., 176 So.2d 827, maintains that he was "upon" the vehicle. We are in agreement with the suggestion in the cited authorities that an interpretation favorable to the insured should be accorded the words of such a definition where they are not clear in meaning, provided such a liberal construction does not lead to absurd results. Each such instance must be determined in the light of its own attending circumstances.
Plaintiff bears the burden of proving his occupancy of the automobile as an essential element of his claim. As previously noted, plaintiff did not at any time place himself in or upon the Sheriff's car. We likewise note Deputy Allen's testimony unequivocally to the effect that plaintiff was turning toward the Hurst car to attach the jumper cables to that vehicle when the accident happened. We further note that Allen subsequently retracted this statement and asserted he was unaware of plaintiff's position at the time of impact. We conclude therefore the evidence preponderates in favor of the conclusion that plaintiff was not in or upon the police unit at the time of his injury.
In claiming entitlement to recovery against Travelers as legal representative of *40 the Sheriff of St. Helena Parish, plaintiff relies upon the following policy provision:
"I. Damages For Bodily Injury Caused by Uninsured Automobiles:
The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, herein called `bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile, * * *"
In essence plaintiff maintains that as a Deputy Sheriff, he is a "legal representative" of the Sheriff under the above quoted provision and, as such, is also an insured entitled to recover for personal injuries inflicted by an uninsured motorist. The fallacy of this argument lies in the fact that the term "legal representative" as used in the above provision is intended to mean the legal representative of an injured insured. (Emphasis added by the Court.) It does not encompass a legal representative of the named insured seeking recovery on the same basis as the named insured. This construction follows from the use of the words "bodily injury sustained by the insured". The obvious purpose of affording recovery by a legal representative is to permit recovery by the injured insured through a legal representative when the injured party is incapable, for some legal reason, of asserting the claim himself. Examples of this nature include an injured minor or interdict. The term would also include the legal representative of one's estate suing for recovery in the event of death.
Defendant Girley's plea for a reduction in the award of damages because of his relatively impecunious circumstances is well founded. The record shows that Girley is employed at a salary of $530.00 monthly. He owns some furniture and has an undetermined equity in an automobile on which he owes a balance of $1,500.00. He has a bank account of $5.00. He owes three finance companies a total of approximately $1,800.00 and $500.00 to his bank, on which accounts he makes monthly payments in addition to the note on his car.
It suffices to state that plaintiff's injuries were extremely severe and left him with some permanent disability. From a defendant capable of responding, plaintiff would be entitled to a most substantial recovery. However, in awarding damages for personal injuries, defendant's ability to pay is a factor which must be considered. Ory v. Bosio, La.App., 159 So. 138. Considering the circumstances of this case, we find that recovery against defendant Girley in the sum of $15,000.00 will do substantial justice between the parties.
It is ordered, adjudged and decreed that the judgment of the lower court awarding plaintiff William M. Smith judgment against defendant Travelers Insurance Company is reversed and set aside and plaintiff's claims against said defendant rejected and dismissed with prejudice.
It is further ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiff William M. Smith and against defendant Owen C. Girley be and the same is hereby reduced from the sum of $201,231.33 to the sum of $15,000.00.
It is further ordered, adjudged and decreed that the judgment of the trial court in favor of Travelers Insurance Company on Travelers' third party demand against defendant Owen C. Girley in the sum of $5,000.00, under Travelers' policy to the Sheriff of St. Helena Parish, be and the same is hereby reversed and set aside.
It is further ordered, adjudged and decreed that in all other respects the judgment of the trial court is affirmed, costs to be paid by defendant Owen C. Girley.
Amended and rendered.